LEO WERNOKOFF v. STATE.

163 So. 225.
Opinion Filed October 1, 1935.

*Harry P. Johnson and T. G. Futch,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

PER CURIAM.—Leo Wernokoff was indicted for the armed robbery of one F. P. Schargus, the indictment charg-

ing defendant with taking from Schargus $10.00 in money and a hundred and seven (107) boxes of oranges, valued at a dollar a box. Upon trial he was found guilty, and from the judgment of conviction and sentence which followed he took writ of error.

On the trial the State produced three witnesses, viz.: F. P. Schargus, Mrs. Eva Pate, and A. M. Davis.

Davis, who operated the packing plant at Groveland, testified that he believed the fruit was taken from the packing house on the night of December 17, 1933, that he arrived there between ten and eleven o'clock that night and the fruit was gone, but he does not know how it got away.

Mrs. Pate testified that she saw defendant and his brother in the Unique Restaurant in Groveland between five and six o'clock on the afternoon of December 17th, 1933. She was also permitted to testify over objection of the defense counsel that she saw two trucks parked near the packing house after eight o'clock on the night of the robbery.

F. P. Schargus, night watchman at the packing house, testified that the defendant drove up to the packing house about ten o'clock that night and inquired whether they had any tangerines to sell. Upon being told that they had none, he asked for a few sample oranges and took them out to the car to show to his companion. In a few minutes, defendant, upon returning, said that "the old man" liked the oranges all right; that he was first going to get some tangerines and would be back in about a half an hour. He returned in about half or three-quarters of an hour, and asked to go inside and look at some No. 1 oranges. It was dark in front with the lights turned down. Schargus, by aid of the lantern, took defendant inside the packing house. When on the inside, defendant, after asking to hold the lantern, pulled his pistol on Schargus, got him between some

barrels, made him lie down on his stomach and tied his hands and feet. After the robber left he untied himself in a little while and gave the alarm. He did not know how many trucks were in front of the packing house at the time of the robbery. He saw defendant only twice that night; he had never seen him before; and did not see him after that occasion for four months, yet positively identified him as the one who robbed him on the night of December 17th, 1933.

Defendant testified that he operated from the Duval Fruit Market in Jacksonville, and made a trip South to get fruit, leaving Jacksonville with his brother the day before the robbery. En route, they stopped at a filling station in Leesburg to have the brakes fixed; and then stopped at the Unique Restaurant in Groveland late that afternoon. Then they went on to Winter Haven and purchased 68 boxes of oranges from the Bell Ridge Packing House, that being after dark. They didn't get a receipt for the fruit then, but have since obtained one. On the return trip, they went back through Groveland and Leesburg, and were stopped at Leesburg by Officer Haney and taken to Miller's filling station. Defendant offered to pay the bill if they would phone to Bell Ridge Packing House to find whether he bought the fruit or not. Some people came and looked at the fruit, but after about forty-five minutes he was permitted to proceed. His truck held only 70 to 75 boxes of fruit. He had $125.00 with him on that trip. He had only one truck at that time though he has since bought another.

Harry Wernokoff, his brother, substantially corroborated the testimony of defendant.

Mrs. Wernokoff, their mother, testified that she always gave the boys enough money when they made these trips.

Fred Reynolds, who sometimes drives with defendant,

testified that he was not with him on the night of the robbery; but that he has been with defendant on trips since the robbery and that they have stopped three or four times and had a meal at the Unique Restaurant in Groveland.

Officer Haney testified that he stopped two trucks just outside of Leesburg between twelve and one o'clock on the night of the robbery. The first truck had a bill of sale for the fruit, and since there was no evident connection between the two, the first was allowed to proceed. Mr. Holloway, the packing house manager, came down to identify the fruit in the second truck, which was defendant's and concluded that it was not his. Defendant was without bill of sale for the fruit but was willing to pay for a phone call to the people from whom he bought it. Prior to stopping these two trucks and before Officer Haney arrived there, another truck had stopped out in the dark near Miller's filling station, two of the men, acting rather strangely, got out of the truck and had drinks and then hurriedly left. Mr. Holloway phoned Officer Haney that the truck with the fruit was a Chevrolet truck with a red cap and that it had 103 or 105 boxes of oranges on it. Holloway had obtained his information from Schargus. Defendant's truck had about 75 boxes of fruit on it, was a short-bodied Chevrolet truck, but the cab was dark blue or black. Defendant and his brother were not at all nervous and did not seem to be holding back anything and were perfectly willing to stay there as long as witness wanted them to stay. He let them go on their way.

The jury returned a verdict of guilty against the defendant.

Defendant made a motion for a new trial on the usual general grounds, and also upon certain special grounds which we will discuss presently.

The court denied the motion for new trial.

The defendant was then sentenced to "be punished by imprisonment in the State prison at hard labor for the term of six years and seven months."

It is contended that several errors in the proceedings of the trial below warrant reversal of the case for new trial.

The witness, Mrs. Eva Pate, was permitted, over objection of the defense counsel, to testify that some time after eight o'clock on the night of the robbery, she saw two trucks parked near the packing house where the robbery was alleged to have taken place. No other testimony of any kind was given to connect those trucks with the fact that fruit was stolen. Neither was it shown or inferred that those two trucks remained there until the robbery was perpetrated, or that they were in anywise identified with the robbery. There was no testimony showing whether any trucks were there when the robbery occurred. The fact that two undescribed trucks were seen near the packing house from two to two and a half hours before the robbery occurred had little if any probative value and should not have been admitted (Elliott v. State, 77 Fla. 611, 82 So. 139), but we are not convinced that the admission of this testimony, standing alone, constituted harmful or reversible error.

"Evidence, however, must relate to and be connected with the transaction it is offered to elucidate, and this connection must be immediate, and not remote or far-fetched. The law does not require a necessary connection, which would practically exclude all presumptive evidence, but such as is reasonable, and not latent and conjectured." 10 R. C. L. 926, Sec. 88."

The testimony above mentioned was practically of no value to the jury, but plaintiff in error contends that they

gave it undue weight, in view of the State's argument, as evidenced by their verdict.

The second event during the trial of the case which it is contended was calculated to disrupt a fair appraisal of the evidence by the jury was the argument of the State's Attorney that the defendant employed two trucks in the robbery, and that the truck driven by defendant was loaded with fruit already purchased by defendant and was used as a decoy in allowing the other truck to escape with the fruit alleged to have been stolen. The defense attorney objected to a portion of the argument in this language:

"If your honor please, I wish to enter an objection on behalf of the defendant to the State's Attorney arguing *as a matter of evidence that there were two trucks present at the time of the alleged crime* and that the truck as driven by the defendant was loaded with fruit purchased by the defendant and used as a decoy in allowing the other truck to escape with the fruit alleged to have been taken at the time of the commission of the alleged crime when no such evidence was submitted to the jury in said cause." (Italics supplied.)

The comment of the Court upon this was:

"You, gentlemen of the jury, are to try this case on the evidence introduced and not the argument of counsel and what counsel may say in their argument is not evidence in the case."

Thus it appears that at the time objection was made to that line of argument, the Court did not effectively tell the jury that the State's Attorney was in error in arguing that, as a matter of evidence, there were two trucks present at the time of the alleged crime. The State's Attorney probably *inferred* this from Mrs. Pate's testimony that there were two trucks parked near the packing house some two

hours before that. The Court merely ruled in substance, that the jury should consider the evidence, whatever it was, and not the argument if it differed therefrom. We hardly think the learned trial judge went far enough. Some specific statement should have been made by the court to the effect that in making the statement the defendant objected to, the State's attorney was mistakenly arguing as a fact a matter not in evidence, as distinguished from his inferences from facts which were in evidence, and that such portion of his argument should be disregarded by the jury.

"It may be regarded as an established rule, however, that it is error, sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue, calculated to prejudice the jury, and not in evidence, or to assume in argument that such facts are in the case, when they are not." 2 R. C. L. 435, Sec. 34, and cases there cited including Clinton v. State, 53 Fla. 98, 43 So. 312, 12 Ann. Cas. 150.

The defendant satisfactorily explained his whereabouts on the night of the robbery. When stopped by Officer Haney, he was not in a truck described as the one in which the stolen fruit would be found. The fruit in his truck was bought from another packing house, for which he later obtained and produced a receipt. One of the operators of the packing house from which the fruit was alleged to have been stolen after inspecting it, said the fruit in defendant's truck did not come from his packing house. There was no evidence that a second truck was in anywise connected with defendant's truck, but on the contrary there was evidence that there was no connection between defendant's truck and another stopped at the same time.

In spite of Schargus's testimony as to the identification of the plaintiff in error, some four months later, as the

man who committed the crime, he may have been mistaken, and therefore we are not entirely satisfied that the errors above pointed out were harmless. Cases of mistaken identity are all too common for us to be able to say that the jury based their verdict solely on Schargus's testimony, and that therefore the errors above pointed out should be disregarded. Mims v. State, 70 Fla. 530, 70 So. 565. For these reasons we conclude that the motion for new trial should have been granted.

Reversed and remanded.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J. J., dissents.

BUFORD, J. (dissenting).—I do not think the record reveals any reversible error. I think the evidence was amply sufficient to warrant the jury in returning a verdict of guilty and that the judgment should be affirmed.