HAROLD DUKE v. STATE.

185 So. 422.
Opinion Filed June 17, 1938.
Rehearing Denied July 8, 1938.
On Rehearing Opinion Filed November 9, 1938.

*W. D. Bell,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus W. Norwood,* Assistant Attorney General, for the State.

PER CURIAM.—In this cause Mr. Chief Justice ELLIS, Mr. Justice BUFORD and Mr. Justice CHAPMAN are of the opinion that the judgment of the Circuit Court herein should be affirmed while Mr. Justice WHITFIELD, Mr. Justice TERRELL and Mr. Justice BROWN are of the opinion that the said judgment should be reversed for new trial. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the judgment should be affirmed or reversed, and there is no prospect of an immediate ·change· in the personnel of the Court, the judgment should be affirmed, therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the judgment of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.

PER CURIAM.—The information herein contained three counts charging that the defendant (1) "did unlawfully, willfully and maliciously set fire to and burn a certain dwelling house * * * the property of Paul Duke"; (2) "did unlawfully, maliciously and willfully set fire to and burn that certain dwelling house * * * the property of Cleo Duke"; (3) "did unlawfully, willfully and maliciously set fire to and burn that certain dwelling house * * * the property of Harold Duke." There is no allegation in any count as to the occupancy of the dwelling house alleged to have been burned.

A motion was made to quash the information upon grounds going to the validity of the statute defining the offense, as well as to the sufficiency of the information as a pleading.

Chapter 15603, Acts of 1931, is as follows:

"An Act to Define and Punish the Offense of Unlawfully Burning, Setting Fire to, or Attempting to Burn or Set Fire to, Property; or Aiding, Assisting, Counselling, Procuring or Advising in the Burning of or Setting Fire to, Property in This State, Whether the Same Would Be Arson at Common Law or Otherwise; to Denominate as 'Arson' the Crime Hereby Denounced, and to Divide the Same Into Degrees, and to Provide the Punishment for each Degree.

"Be It Enacted by the Legislature of the State of Florida:

"Section 1. Arson—First Degree. Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied, or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of Arson, in the First Degree, and upon conviction thereof, be punished by imprisonment in the State prison for not more than twenty years.

"Section 2. Arson.—Second Degree. Burning Buildings, etc., Other Than Dwellings. Any person who willfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or of another, not included or described in the preceding section, shall be guilty of Arson in the Second Degree, and upon conviction thereof, be punished by imprisonment in the State prison for not more than ten years.

"Section 3. Arson. Third Degree. Burning of Other Property. Any person who willfully and maliciously sets fire to or burns or causes to be burned or who

aids, counsels or procures the burning of any personal property of another of whatsoever class or character of the value of Twenty-five or more Dollars, shall be guilty of Arson in the Third Degree, and upon conviction thereof, shall be punished by imprisonment in the State prison for not more than three years.

"Section 4. ARSON.—Fourth Degree. ATTEMPT TO BURN BUILDINGS OR PROPERTY. Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in the foregoing sections, or who commits any act preliminary thereto, or in furtherance thereof, shall be guilty of Arson in the Fourth Degree and upon conviction thereof be punished by imprisonment in the State prison for not more than two years or fined not to exceed One Thousand Dollars.

"Section 5. All laws or parts of laws in conflict with this Act are hereby repealed.

"Section 6. This Act shall take effect July 1, 1931.

"Approved June 25, 1931."

See Secs. 7208 (8), (9), (10), (11), Perm. Supp. 1936 to C. G. L.

This Act was held valid in Love v. State, 107 Fla. 376, 144 So. 842. The prior statute relating to arson was held to be invalid because it violated Section 16, Article III, of the State Constitution in that it contained regulations of two distinct and incongruous subjects. See Chapter 11812, Acts of 1927; Williams v. State, 100 Fla. 1054, 132 So. 186; Sawyer v. State, 100 Fla. 1603, 132 So. 188.

It is in effect argued here that Chapter 15603 violates Section 16, Article III, of the Constitution in that the title of the Act expresses the subject of the Act to be "to denominate as 'arson' the crime hereby denounced, and to divide the same into degrees, and to provide the punishment

for each degree," when "the statute does not denominate any particular crime as arson but each section deals with a different kind of burning, and instead of denouncing any one crime as arson, it has set forth four crimes and denounced each as arson"; that the crimes included in the statute are not degrees of any one offense, but four separate and distinct statutory crimes; that "the statute purports to denounce a single crime and proceeds to denounce four separate and distinct crimes." Such contentions are untenable.

It is within the power and judgment of the Legislature by statute to define arson and to make it applicable to dwelling houses or other property, or to define different degrees of arson with reference to different kinds of property; and it is not necessary for any such definitions to conform to common law definitions of arson or to definitions of arson contained in standard authorities on definitions, where the statute definitely and sufficiently gives the elements of the crime defined, and no provision of organic law is thereby violated. The statute is quoted above and its title does not express more than one subject of legislative regulation; and the subject expressed in the title is not misleading as to matter contained in the body of the statute.

The subject of the enactment is the definition and punishment of crimes denominated arson, whether the same would be arson at common law or otherwise; all are kindred offenses and all are denominated arson, each a stated degree of arson with appropriate punishment for each degree, all definitely defined.

All the provisions contained in the body of the Act directly relate to the subject expressed in the title or to matters properly connected therewith. Section 16, Article III, of the Constitution is not violated by the enactment of Chapter 15603, Acts of 1931.

It is urged that the statute "endeavors to not only change the definitions of common law arson, but * * * it changes the definition of a dwelling house without giving any notice of such change in its title under the title of the Act, the property made the subject of arson by the Act may be defined by the statute even if it does include dwelling houses, whether occupied, unoccupied or vacant, and also other property.

The Constitution requires the title of an Act to express the subject of the Act, not the mode or manner in which the subject is treated or regulated by the Act, and unless the title is misleading as to, or is too restricted to cover, the subject of the Act or matters contained in the Act, the Constitution may not be violated.

While at common law the usual definition of the crime of arson is "the willful and malicious burning of a dwelling house, or outhouse within the curtilage of a dwelling house of another," yet the Legislature by statute may change the definition of arson so that the crime may be extended to the burning of other houses, or property other than dwelling houses or other houses within the curtilage, whether the houses be unoccupied or not as an element of the statutory offense. See Williams v. State, 100 Fla. 1054, 132 So. 186; 6 Corpus Juris Secundum 718, 733; 4 American Jurisprudence 87, 103.

The words "dwelling house" may mean "a place of habitation and abode"; and in a prosecution under the common law definition of the crime of arson, it may be proper or necessary to allege that the dwelling house was occupied by a designated person. But as the statute has defined arson to be in stated cases whether the "dwelling house" unlawfully burned be "occupied, unoccupied or vacant," it is not essential that the information allege the name of the occupant of the dwelling house in this case. Under the

statute the crime relates to a dwelling house, without reference to its occupancy, the offense and the punishment being the same whether the dwelling house is occupied, unoccupied or vacant; but the punishment is greater than that for a criminal burning of other buildings or property than a dwelling house. See degrees of arson as defined in the statute, *supra*.

In defining four degrees of arson, the statute is not controlled by common law definitions of words or of elements of the crime of arson. Chapter 15603 does not expressly amend the previous statutes on the subject of arson, but expressly repeals all laws or parts of laws in conflict with the enactment. Section 1 of Chapter 15603 embraces *"any* dwelling house, *whether occupied, unoccupied, or vacant,* or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belong to or adjacent thereto, whether the property of himself or of another," and Section 2 embraces "any building or structure of whatever class or character, whether the property of himself or of another, not included or described in the preceding section"; but this does not require an allegation or proof as to the occupancy of a dwelling house in prosecutions for arson in the first degree, under Section 1, Chapter 15603.

Unlike Section 1, Chapter 11812, Acts of 1927 (Section 7208 C. G. L.), and unlike Section 5106 (3273) R. G. S., (Section 1, Sub-chapter 4 of Chapter 1637, Acts of 1868) Section 1, Chapter 15603, Acts of 1931, above quoted in full, defining the crime of arson in the first degree, embraces any dwelling house; "occupied, unoccupied or vacant." This enlarged the common law concept of a dwelling house in prosecutions for arson; and it also enlarges the statutory definitions of arson contained in previous statutes of this State. This makes it unnecessary to allege the name of the occupant of a dwelling house in informations and in-

dictments charging arson in the first degree under Section 1, Chapter 15603, Acts of 1931.

Due to the terms of Chapter 15603, Acts of 1931, the decisions to the contrary in Sawyer v. State, 100 Fla. 1603, 132 So. 188, and in previous cases, are inapplicable as precedents on the point of alleging occupancy of a dwelling house in arson prosecutions.

A witness for the State who testified that the defendant called him at night to help control the fire, was asked:

"Q. What did you see when you got down there?

"A. Just saw both houses afire.

"Q. What both houses?

"A. No. 1 and No. 6.

"Q. You mean the house known as the Paul Duke house and house Harold Duke lived in, both?

"A. Yes, sir. * * *

"Now comes the defendant and moves the Court to require the State at this time to make plain as to which house he is prosecuted—which of the dwelling houses named in the information.

"MR. STUBBS (the State Attorney): Both of them.

"JUDGE BELL: Would like for your Honor to rule on my motion. I am going to state at this time the defendant is taken by surprise by the change of the State's theory of this case, because it was distinctly stated here at the outset of the case when we were arguing with reference to a choice or an election between the different counts of the information, State's Attorney distinctly said that it was the same house in each count, but he was merely alleging the ownership in different ways. Now he is placing before this jury testimony with reference to two houses, and we ask, as a matter of fairness, so that the jury may know what they are trying him for, which house he is trying him for.

"The Court: I will have to leave it to the jury.

"To which ruling and decision of the Court the defendant by counsel did then and there except."

The first count of the information charges the unlawful burning of "a dwelling house located on section thirty (30) Township forty-three (43) south of Range twenty-three (23) east," Lee County, Florida, "the property of Paul Duke." The evidence showed the burning of two houses, the property of Paul Duke on the described land at the same time. The defendant by counsel in effect asked that the house charged to have been burned be identified in the testimony. The State Attorney replied as above stated. The Court left it to the jury. The jury found the defendant guilty under the first count which did not identify by description, number or otherwise the house alleged to have been burned by the defendant, and did not refer to either of the two houses shown to have been burned. The result is the defendant is convicted of burning an unidentified house upon proof of the burning of two houses. He was charged with burning a dwelling house and convicted of burning a dwelling house, the property of Paul Duke, when the testimony showed the burning of two dwelling houses without identifying the dwelling house referred to in the information. This does not protect the defendant from another prosecution for the unlawful burning of either dwelling house shown to have been burned, both of which were located in the described premises belonging to Paul Duke. This was harmful error.

Whitfield, Terrell and Brown, J. J., concur.

Ellis, C. J., and Buford and Chapman, J. J., dissent.

## ON REHEARING.

PER CURIAM.—The judgment of conviction herein was affirmed on an evenly divided Court. A rehearing was granted and reargument had.

In his address to the jury the State Attorney said:

"Harold didn't live down here; he didn't come down here until they had something for him to do. Did you know that? I want you to think about that. This fellow lived in Kentucky. His daddy is not here today either, you see? Being tried for a serious criminal offense, but he ain't here and he was notified in ample time, and that man right yonder would stop it if he hadn't been notified, and his mother was notified and ain't either one of them here.

"JUDGE BELL: I suppose you are apprised that his father is dead?

"MR. STUBBS: Well, his mother. That is closer to him. I can conceive of his daddy going back on him, but never his mother going back on him.

"JUDGE BELL: Object to the State attorney arguing absence of his mother and father as it is not a matter concerned with this case.

"MR. STUBBS: Matter of legitimate comment. They were notified that the law contemplates the extension of this invitation for that purpose.

"THE COURT: Well, with the correction, proceed.

"MR. STUBBS: I have got two old boys out to the house. I am not especially sold on one of them either. I might run out on him, but never as long as the sun shines would his mother run out on him. She ain't here. It can't mean but one thing in the world. They talk about this fellow's wonderful character; that they haven't brought anybody here to show to the contrary. You know as well as I do

you can't put the defendant's character in evidence unless
he puts it in himself. There hasn't been a fellow put on
the stand to prove this fellow had a good character. Don't
let them kid you. And under the law I couldn't put on a
single man about his character until he opened it up, and
he never opened it."

Errors are assigned through the motion for new trial to
other remarks by the State attorney in his address to the
jury, but it is not necessary to set them out here.

The Court is of the opinion that regardless of the guilt
or innocence of the defendant, such remarks of the State
attorney to the jury as those quoted above are so preju-
dicial to the defendant as to entitle him to a new trial.

In Washington v. State, 86 Fla. 533, 542, 98 So. 605,
609, it is said:

"The prosecuting attorney occupies a semi-judicial po-
sition. He is a sworn officer of the Government with no
greater duty imposed on him than to preserve intact all the
great sanctions and traditions of the law. It matters not
how guilty a defendant in his opinion may be, it is his duty
under oath to see that no conviction takes place except in
strict conformity to law. His primary considerations
should be to develop the facts and the evidence for the
guidance of the court and jury, and not to consider himself
merely as attorney of record for the State, struggling for a
verdict.

"In argument to the jury counsel for all parties are re-
stricted to the evidence and reasonable deductions there-
from, but within this rule they have a very wide discretion.
As was said in Mitchum v. State, 11 Ga. 615, text 631, 'His
illustrations may be as various as are the resources of his
genius; his argumentation as full and profound as his learn-
ing can make it; and he may, if he will, give play to his
wit, or wing to his imagination. To his freedom of speech,

however, there are some limitations.' Any attempt to pervert or misstate the evidence or to influence the jury by the statement of facts or conditions not supported by the evidence should be rebuked by the trial court and if by misconduct a verdict was influenced a new trial should be granted. Clinton v. State, 53 Fla. 98, 43 South. Rep. 312; Bradham v. State, 41 Fla. 541, 26 South. Rep. 730; 3 Wharton's Crim. Proc. p. 1496."

It was not error for the Court to admit evidence showing the existence of insurance on the houses, even though the insurance might be collected thereon by Paul Duke, in whose name the property stood at the time of the fire. The evidence shows that the defendant, Harold Duke, was the nephew of Cleo Duke, and that Paul Duke was the son of Cleo Duke; that there were twelve houses on the premises, and that only two of them were insured and these were the two that were burned. That Paul Duke tried to get a greater amount of insurance than he secured, and got this only after telling the insurance agent that he and his wife were going to improve the houses and move out there. The testimony also showed that the defendant admitted to the witness, Carl Wilson, that he had burned the houses in order that his uncle might collect the insurance thereon.

In Sawyer v. State, 100 Fa. 1603, 132 So. 188, the Court said:

"It is contended that the court erred in admitting evidence that Charles W. Sawyer, who was the father of defendant, Enslow Sawyer, had the house and its contents fully insured; that the defendant was not charged with the statutory offense of burning property with the intent to defraud the insurer. Although the defendant was charged with arson—the malicious burning of the dwelling of another—and an intent to defraud the insurer is not an element of that offense, we are inclined to the view that where

evidence is introduced tending to show the *corpus delicti,* that is, that the burning was not accidental but incendiary, the State may resort to circumstantial evidence to show that the defendant committed the act, and that he did so with criminal intent. Where the defendant himself holds a policy of insurance on the property, this would certainly be admissible as showing a possible motive for the crime. Where the policy is not held by the defendant, but is held by the defendant's father, and where, as here, there is evidence of statements by the accused tending to show an intention on his part to burn the house or cause it to be burned in order that his father might collect the insurance, we think there was no error in permitting the State to prove that the father had the house and contents insured and the amount of the insurance. Rogers v. State, 26 Tex. A. 404, 9 S. W. R. 762; State v. Rogoway, 45 Oregon 601, 78 Pac. R. 987, 81 Pac. R. 234, 2 Ann. Cases, 431."

The evidence was sufficient to *prima facie* prove the existence of a conspiracy and it was therefore competent for the Court to admit the statements and acts of each of the conspirators.

The first count of the information alleged that Paul Duke was the owner of the property burned, the second count alleged that Cleo Duke was the owner, and the third count alleged that Harold Duke was the owner. There was some doubt in the mind of the State attorney as to who the jury would find owned this property, and it was proper for him to allege ownership in different persons as he did in the information.

The defendant assigned as error the Court's denial of defendant's motion to require the State to elect the count of the information upon which it would proceed.

In 31 C. J., Indictments and Informations, Sec. 361, pp. 790-791, it is said:

"The granting or refusal of a motion to compel the prosecution to elect as to which of several counts it will proceed is within the sound discretion of the trial court, and defendant is not, as a matter of right, entitled to require, at the commencement of the trial, that the State elect between the counts. The rule has been applied where the several counts set forth the same charge in different ways to meet the evidence, or different means of commission of the same offense, or the same act as different offenses, or different degrees of the same offense, or even distinct misdemeanors, or distinct felonies. The ruling on a motion to require an election will not be reviewed, except in a clear case of abuse of such discretion. Hence the refusal is not the subject of exceptions, nor a ground for a writ of error, or for a motion for new trial. If from the inspection of the entire record it is apparent that no prejudice resulted to accused, the refusal of an election which might properly have been granted is no ground for reversal."

See also Eggart v. State, 40 Fla. 527, 25 So. 144; Branch v. State, 76 Fla. 558, 80 So. 482; Presley v. State, 61 Fla. 46, 54 So. 361; Gantling v. State, 40 Fla. 237, 23 So. 857; Murray v. State, 25 Fla. 528, 6 So. 498.

The defendant has not shown wherein he was prejudiced by the Court's refusal to require the State attorney to designate the count upon which he was relying for a conviction. Since the matter is one within the sound discretion of the Court, and since no abuse of this discretion has been shown, there was no error in the Court's refusal to require the State to designate the count on which it was relying for a conviction.

Other matters presented as errors harmful to the accused will perhaps not occur on another trial, and they need not be discussed here.

Reversed for a new trial.

TERRELL, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., adheres to the original opinion filed in this cause.

THOMAS, J., not participating.