## MANUEL BLANCO v. THE STATE OF FLORIDA

7 So. (2nd) 333                                          Division B
March 17, 1942                     Rehearing Denied April 17, 1942

Wm. C. Pierce, and Zewadski & Pierce, for appellant.

J. Tom Watson, Attorney General, Millard B. Conklin, Assistant Attorney General, and Woodrow M. Melvin, Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

On February 8, 1941, George Chance, Manuel Blanco, Elmo Guttierez, and Santiago Posados were by the County Solicitor of Hillsborough County, Florida, in a single count informed against for armed robbery of the Royal Theatre, situated in the City of Tampa, Florida, by feloniously robbing it of the sum of $53.50. The money, when taken on February 2, 1941, was in the possession of Mary Hernandez. Motions to quash the information were made and denied. Santiago Posados, Elmo Guttierez and Manuel Blanco were placed upon trial and on April 4, 1941, by a jury found guilty.

On April 21, 1941, Manuel Blanco, through counsel, filed a motion for a new trial, which was heard, considered and granted on June 23, 1941. On July 22, 1941, Manuel Blanco was placed upon trial in the Criminal Court of Record of Hillsborough County for the second time on the original information, and on July 28, 1941, was by a jury found guilty of unarmed robbery as charged in the information. A motion for a new trial was made and denied, when the trial court sentenced Manuel Blanco to the State Prison at hard labor for a period of ten years. An appeal has been perfected to this Court to review the sentence and judgment of conviction.

The first question posed for adjudication is viz: Where in a prosecution for robbery the property taken is alleged in the information to be a certain sum of money "the property of the Royal Theatre," and at the trial evidence reveals that the money was taken from the cashier of said Theatre while she was working in the ticket booth, and that although at the moment of the robbery she had not checked up the day's receipts, she had "picked up all of the money," is the ownership of the money sufficiently averred or established?

The information alleged that the ownership of the $53.50 alleged to have been feloniously taken was the property of the Royal Theatre. It is contended by counsel for appellant that the information is fatally defective because of this allegation of ownership of the stolen property. Counsel cite many decisions of this Court to sustain their position, beginning with Stephens v. State, 92 Fla. 43, 109 So. 303. Also Pippin v. State, 102 Fla. 1124, 136 So. 883. It was held therein that the indictment should allege the ownership of the property, as well as the name of the person from whom it was taken. If the property alleged to have been taken was the property of the appellant, a crime would not have been committed. The appellant here did not assert ownership of the $53.50, and neither did he question the ownership of this money as being the property of the Royal Theatre. The appellant submitted to the jury testimony to show that at the time the Royal Theatre was robbed he was attending another theatre in the City of Tampa. The cases of Croft v. State, 109 Fla. 188, 146 So. 649; Aldrich v. State, 123 Fla. 352, 166 So. 838; Alvarez v. State, 128 Fla. 202, 174 So. 333; Hamilton v. State,

133 Fla. 481, 182 So. 854, have been reviewed. Support of counsels' contentions may be found in some of these citations. It is our conclusion that these several decisions have been placed at rest by Section 114 of Chapter 19554, Acts of 1939, Laws of Florida (commonly referred to as the Criminal Code), and Sub-sections 2 and 3 thereof viz:

"Section 114. Name of Person Other Than Dependant. . . .

"(2) It is sufficient for the purpose of describing any group or association of persons not incorporated to state the proper name of such group or association, or to state any name or designation by which the group or association has been or is known or by which it may be identified, or to state the name or names of one or more persons in such group of association, referring to the other or others as 'another' or 'others.'

"(3) It is sufficient for the purpose of describing a corporation to state the corporate name of such corporation, or any name or designation by which it has been or is known, or by which it may be identified, without an averment that the corporation is a corporation or that it was incorporated according to law."

The money was taken from Miss Hernandez while she was at the ticket window of the Royal Theatre. Prior to the robbery she was selling tickets to patrons and customers of the Royal Theatre and was prevented from checking the cash on hand against the tickets sold because of the robbery. It is reasonable to assume that the tickets for the second or last show of the evening had been sold around 9:30 P. M., on February 2, 1941, when the robbers appeared and by force took the money. Another employee of the

Royal Theatre was present when the money was taken. The jury had sufficient testimony before it to sustain their conclusion that the property stolen was the property of the Royal Theatre.

The second question posed for adjudication is viz: Where one defendant in a criminal case is tried alone, may the statements or confessions of his co-defendants, implicating him in the offense charged, which statements were repeated by such co-defendants in his presence, and the defendant assented to same, be introduced in evidence against him?

It is fundamental that a confession made by an accomplice could not be admitted in evidence as a confession against another. The confession would be admissible as evidence only as against the party making the confession. See Stoutamire v. State, 133 Fla. 757, 183 So. 316. It is the duty of the trial court, under the law, to so instruct the jury.

The sheriff testified that he questioned Chance, Guttierez, and Posados in the presence of Blanco and the three admitted or confessed that the four of them robbed the Royal Theatre and when the confessions were made Blanco remained silent. The three were sent from the room, leaving the appellant alone with Sheriff Culbreath, when this colloquy occurred:

"Q. Sent them all out except Blanco? A. Yes, sir. Then he asked him about it. He denied it at that time; and I interrupted and said, 'Blanco, you know you are telling a lie;' that 'you asked a man for a match on the corner of the street just down from the theatre, and two boys that were with you were standing some six or eight feet away from you.' Then he turned to Bush and says, 'Yes, Chief, that is right; I was in this one job, but I didn't have anything to do

with any other job.' Bush asked him about who was the gunmen, and he said that he, Chance and Guttierez. Bush asked him why did he take the money."

Officer Bush heard the defendant's statement and that of the others jointly informed against, and his testimony is about the same as Sheriff Culbreath's. Detectives Beasley and Gordon Grant and Woody Thompson heard Blanco's incriminating statement, "Well, that is the only one I am guilty of, the Royal Theatre." The latter statement certainly is admissible when shown to have been voluntarily made. The appellant remained silent and failed to speak or deny the statements of guilt involving him made by others jointly indicted, and these statements were made in his presence, but it is asserted that this testimony constitutes reversible error. We can not agree to this contention. See Anthony v. State, 44 Fla. 1, 32 So. 818; 20 Am. Juris. Sec. 493. Those jointly informed against admitted the Royal Theatre robbery and additional crimes, which appellant while hearing them, remained silent and subsequently, in the absence of the others, denied the other crimes admitted to have been committed by those jointly informed against with him, but admitted being present when the Royal Theatre was robbed. We fail to find error in this assignment. See Bank v. State, 84 Ala. 431, 4 So. 382.

Appellant poses for adjudication the question viz: Where in a prosecution for robbery there is not substantial evidence against the accused other than his own alleged confession, should a conviction be sustained?

It is contended that the evidence adduced is legally insufficient to sustain a judgment of conviction. The

appellant admitted that he was in the Royal Theatre robbery, but no other. It cannot be disputed on the record that the Royal Theatre was robbed around 9:30 o'clock Sunday night, February 2, 1941. The appellant gave as his reason for the robbery that he needed money to meet a maturing note on his automobile. It was shown that the note was due at the time and the car was taken from him because of the defaulted payment. Mr. Dukes, an officer, and an acquaintance of many years of the appellant, identified him as an occupant of a car traveling at a high rate of speed from the theatre that had been robbed immediately after the same was alleged to have been robbed. We think these facts were for the jury under appropriate instructions. See Broxson v. State, 99 Fla. 1187, 128 So. 628.

The next question is viz: Where a witness for the State on rebuttal has presumed to give identification testimony as to an accused person being near the scene of the offense, at or about the time the same was committed, should not the defendant be allowed to adduce evidence from competent witnesses as to the lack of opportunity on the part of any one to make any positive identification at the identical place in question and under conditions proved to be substantially similar as existed when the supported identification took place?

Officer Dukes was standing at the corner of Main Street and Albany Avenue about eight blocks distant from the Royal Theatre. He observed a car going East at an excesive rate of speed and as the car passed him he identified Manuel Blanco as one of the occupants of the car. It passed shortly after the Theatre was alleged to have been robbed. He was able to

obtain the license number of the automobile tag and checked the same. Counsel for appellant proffered to prove by W. B. Wilson and D. M. Stewart that under substantially similar conditions as those prevailing on the night of the robbery where Officer Duke stood and observed, it would have been impossible for any one in the position of Officer Dukes to have identified a person passing in an automobile, as described by Officer Dukes. Experiments were made by the witnesses and the results of the experiments counsel wanted to introduce into evidence for the consideration of the jury. The trial court held the testimony inadmissible, largely on the ground that the general conditions were dissimilar.

The atmospheric conditions obtaining on the night of the robbery do not clearly appear in the record. One of the witnesses testified that it was possibly "blurry" but not raining on the night when the experiments were made. It was on that theory that the trial court declined to admit the testimony. It was not error. See McLendon v. State, 90 Fla. 272, 105 So. 406.

During the progress of the trial and when an Assistant County Solicitor was addressing the jury, the following occurred:

"Mr. Fisher: (In argument to the jury) . . . 'Three others have been convicted, and I think the fourth ought to stand before Judge Himes when they stand before him.'

"Mr. Zewadski: I take exception to the statement that three others have been convicted and 'I think the fourth ought to stand before Judge Himes when they stand before him.'

"The Court: (To the jury) Disregard that remark about the others being convicted; there is no evidence before you on that, one way or the other.

"Mr. Fisher: (Later in his argument) If written confessions had been brought here, they would not have been admitted by the Court.

"Mr. Zewadski: I take an exception to the argument of Mr. Fisher that the Court ruled that if written confessions had been brought here they would not have been permissible. Mr. Fisher ought to tell this jury what the Court ruled the law is; it is just the reverse.

"The Court: That is correct, Mr. Fisher. (To the jury): Disregard that; I made no such ruling as that. Mr. Fisher, you argued to the jury that if you had brought written confessions they would not have been admitted by me. You know the Court made no such ruling as that. (To the jury): Disregard that argument, gentlemen, altogether.

"Mr. Spicola: Confessions made by those three defendants would not be admissible against this one on trial."

The instructions to the jury by the Court on the improper remarks of the Assistant County Solicitor were viz:

"The first thing the Court desires to instruct you on is with reference to the argument of counsel. Counsel on both sides have a right to argue this case to you, and in doing so they have the right to discuss the evidence that has been admitted by the Court, and they have the right to argue what deductions may be drawn from the evidence, and they have a right to illustrate their arguments. The jury, of course, should consider the argument of counsel in arriving

at their verdict. Argument of counsel, however, is not evidence; that is to say, the evidence in this case must come from the witnesses who have testified. The Court desires to repeat the ruling that the Court made during the argument of Mr. Fisher. Mr. Fisher made the statement that the other three had been convicted and that the defendant on trial should be convicted with them. There is no evidence in this case, one way or the other, with reference to the other three defendants, and you will disregard that argument entirely. Mr. Fisher also made the argument that the Court had ruled that any written confession would not be received in evidence by the Court at all. The Court made no such ruling as that, so also disregard that argument of Mr. Fisher. In repeating at this time those rulings made by the Court, the Court does so solely for the purpose of attempting to see that this case is submitted to you on proper evidence and argument; and in doing so the Court is not in any way expressing to you any opinion on the merits of this case or in any way attempting to influence you in your verdict."

Section 242 of the Criminal Code provides or sets forth the grounds for a new trial in criminal cases. It must affirmatively appear that substantial rights of the defendant have been prejudiced. The reasons enunciated from (a) to (g) are the grounds that will justify the granting of a new trial, provided the substantial rights of the defendant have been prejudiced. The challenged remarks of the prosecuting officer, *supra,* were not justified by the testimony or a ruling of the trial court. There was nothing in the record to show that Elmo Guttierez, George Chance and Santiago Posados had been connected with the rob-

bery of the Royal Theatre and would stand before the trial court for the imposition of punishment and that Manuel Blanco should be required to stand before the court along with the other three defendants.

The Assistant County Solicitor remarked that if written confessions had been brought before the court, the trial court would not have admitted their introduction into evidence against the appellant. We have studied the record and find no testimony to sustain the claim as to written confessions by the appellant or the other defendants jointly indicted. This statement is not supported by the testimony and if written confessions were in existence and offered, and their admissibility was lawfully authorized, the trial court certainly would have followed the law. We have improper remarks before the jury and they were prejudicial to the appellant unless the error was cured by the prompt rulings of the trial court and his instructions thereon to the jury.

Counsel for appellant cite and rely largely upon Smith v. State, 147 Fla. 191, 3 So. (2nd) 516, a recent case in which a new trial was granted because of improper remarks of the prosecuting officers. The opinion was, however, adopted by a divided court. The objectionable remarks were not objected to or brought to the attention of the trial court and an opportunity to rule on the propriety thereof was not allowed. The objections to the remarks were not raised in the motion for a new trial nor at any time until an amendment to the motion for a new trial brought forward the objectionable language.

The language employed by counsel in the case supra, in part, was:

"I ask you gentlemen to follow me as we try to make a picture out there with my hands tied behind me. You heard Noriega say that the first time he talked to Chancey, the night before, that Chancey came to the dock and said, 'You got those 200 cases for Barber, of avocado pears?' He said, 'No, I don't have them.' All I can do is analyze the testimony, and in the light of the testimony draw my own deduction. But from the evidence that came from the witness stand, what has been said and what has not been said, it looks to me like a gang war—somebody wanting to 'rub' him out of business; they didn't want him in the avocado business, and they couldn't get him out of business by legitimate channels, and they tried to 'knock him off,' tried to kill him; and I think the facts in this case bear that out." . . .

"I have yet to see as brutal a shooting out of this court and I have seen murder cases, but this is the first time I have ever seen a man being tried in a courtroom for shooting a man that was trying to feed him. Talk about a dog biting the hand that feeds him; he was giving them something to make a living on and he was shot in cold blood. Talk to me about self-defense!" . . .

"Talk to me about physical facts! in this case. Listen: It would be the same story as if two tigers went out on a hunting expedition, and in their hunt they found a lamb, and they pounced on that lamb to eat him up, and lo and behold, the lamb lived; they thought they had killed him; and along comes somebody and takes the lamb to the hospital, and the lamb recovers enough to tell who the tigers were; and they arrest those two tigers and take them into court for tearing up that lamb—doing it up. I pre-

sume Pat would come in here and tell you it was self-defense; that they were two lean, hungry tigers, just hunting a little bit of food, they were so weak they could hardly move, because of weakness and hunger they sank to the ground; and along came this big, strong, husky lamb, saw them on the ground, and as he went to kick them one of them bit him on the leg—wounded him—and the other bit him a little bit —in self-defense; would you gentlemen take that hook, line, sinker and all? Would you believe that the tigers were pounced on by a little lamb? It is just as reasonable, just as logical; it is no more pre-posterous than the story they are trying to put across to you gentlemen of the jury." . . .

"Smith never did tell you today, after the shooting why he didn't go on to Lutz, if they were going after limes; he never did tell you. No, they wanted to get as far away from the scene of the crime as they could; so they went on the far side of town. Noriega at-tended to his own business. Smith tells you they saw him on Florida Avenue, and I believe they had a cut through there, because I believe they were waiting there for him. See whether or not this is a good interpretation of it; Follow me now, gentlemen, be-cause we are getting to the very heart of this thing. If they were going out there to kill the man, what would be more natural than to wait on his route, to-wit, on Florida Avenue, until he had passed, and after he passed they started down there; and he made another stop. Noriega tells you he was stopped down there somewhere; and from Smith's own lips, in my opinion is the strongest bit of evidence in this case— he tells you that they went on down there and they stopped at Broad and Florida. Why did they stop

there, gentlemen of the jury? To smoke a cigarette! Has it got to where people can't smoke a cigarette in an automobile. Are you going to tell me a man can't light a cigarette and smoke? No; they stopped there because that was only a couple or three blocks from the place; that was the street they had picked out; they were watching him, and they sat there like cool, brutal, bandit murderers and calmly smoked their cigarette there until Noriega, the victim, came up; then they shot him." . . .

"Talk to me about physical facts; talk to me about the actions of innocent men; talk to me about the actions of guilty men—every move they make. Then, lo and behold we have self-defense. They have got to tell some story because if they told the truth on that stand it would be equivalent to pleading guilty, and it would not be necessary to take up the time of you six or seven men for a period of time here of three days. They would have plead guilty; so they had to tell something up there.

"Who is interested in this case? Is it Mrs. Bevis? Is it the officers? Or is it that would-be murderer Smith? Who is it? He is the man; you know it. Do you think he would hesitate to stretch the truth or tell a falsehood in order to get you men to turn him loose." . . .

"Chancey would have you believe at that time that Noriega's heart was black, and he wanted to hurt them. If Noriega had a gun, what would have prevented him from shooting at that time if he was mad? Because a man who is mad doesn't stop to look to see who is around; he shoots now, if he is mad; but a man who is going to kill, a gangster, has his lookout, as Smith had Chancey there." . . .

". . . How would you have felt, had you been shot when helping somebody, shot down by them in cold blood, and then they were brought into your hospital room where you were lying at the point of death? Would you kiss them and take them in your arms and hug them? You would have felt nothing but hatred for them—the man that would bite the hand that feeds him.

"So I say to you, gentlemen of the jury, when you retire to consider your verdict, are you going to give men like this license to shoot people down, and shoot them into a corpse, and to go off and say, 'The son-of-a-bitch won't talk now; we got him.' Are you going to give them a license to do that: are you going to say to the world at large, 'All you have got to do is to go out and do not let any eye-witness see you, if you can possibly help it, and if they get a house-wife, and you shoot anybody down—Smith if you like or any of his kind—and then just go into court and tell six sensible reasonable men that you shot in self-defense, and they will turn you loose. I don't believe that these six men are going to do that. I believe that these six men are going to write a verdict that will spell fear in the hearts of men like Smith . . . Write a verdict that will spell fear in the hearts of would-be assassins, would-be killers. . . .'"

The case of Goddard v. State, 143 Fla. 28, 196 So. 596, involved a question of inflammatory argument and abusive language by a prosecuting officer directed to the defendant on trial for a charge of rape and murder, when we held that it was the duty of a trial court, of its own motion, to restrain counsel from indulging in appeals to sympathy, passion or prejudice in cases where feelings may easily be aroused. Any

argument by counsel calculated to arouse passion or prejudice may warrant a reversal.

In the case of Deas v. State, 119 Fla. 839, 161 So. 729, this Court enunciated the rule that should control the argument of counsel in criminal cases before a jury. It is the duty of a trial court to restrain counsel in the use of improper argument, whether presented in the form of objections or by his own initiative. The language employed, in part, is: (text 119 Fla. 845):

"When it is made to appear that a prosecuting officer has overstepped the bonds of that propriety and fairness which should characterize the conduct of a state's counsel in the prosecution of a criminal case, or where a prosecuting attorney's argument to the jury is undignified and intemperate, and contains aspersions, improper insinuations, and assertions of matters not in evidence, or consists of an appeal to prejudice or sympathy calculated to unduly influence a trial jury, the trial judge should not only sustain an objection at the time, to such improper conduct when objection is offered, but should so affirmatively rebuke the offending prosecuting officer as to impress upon the jury the gross impropriety of being influenced by improper arguments. . ."

Remarks of a prosecuting officer before a jury that are entirely outside the record and could not be reasonably inferred from the evidence adduced and prejudicial to the rights of the defendant are grounds for a new trial. See Simmons v. State, 139 Fla. 645, 190 So. 756; Duke v. State, 134 Fla. 456, 185 So. 422; Carlile v. State, 129 Fla. 860, 176 So. 862; Sanchez v. State, 133 Fla. 160, 182 So. 645; Wernokoff v. State,

121 Fla. 62, 163 So. 225; McCall v. State, 120 Fla. 707, 163 So. 38.

The information, which was drafted under Section 7157 C.G.L., alleged an assault on Miss Hernandez with a dangerous weapon and the felonious taking of $53.50 in her custody and possession, being the property of the Royal Theatre. The jury found the appellant guilty of the crime of unarmed robbery. Under Section 7158 C.G.L. it is contended that the grater charge of armed robbery does not include the lesser charge of unarmed robbery. We have considered the authorities cited to sustain this contention. We cannot agree to this conclusion. See Martin v. State, 100 Fla. 16, 129 So. 112; Sections 229, and 230 of Chapter 19554, Acts of 1939, being the Criminal Code; 27 Am. Juris., par. 194, pages 738-9.

We fail to find error in the record.

Affirmed.

BROWN, C. J., TERRELL and THOMAS, JJ., concur.