ALLEN, Acting Chief Judge.
Appellant, Clark, and two co-defendants, Livingston Pinder and Willie Simmons, were tried and convicted for the crime of robbery of a Kwik Chek market in Plant City, Florida.
The appellant states two points in his brief, to-wit:
1. “The court erred in failing to direct a verdict of ‘not guilty’ where the only evidence against the defendant was circumstantial and did not exclude every hypothesis but guilt.”
2. “The court erred in allowing the full confession of one of the co-defendants to be read to the jury and to be taken into the jury room where it contained matters which were inadmissible and damaging as to the defendant Clark.”
We find nothing in the record which shows that the confession was taken into the jury room so we will not further discuss this feature of the case.
Alluding to the second point, the law is well settled in Florida that the confession of one of the co-defendants may be read to the jury upon the proper instructions of the trial judge that such confession is evidence against the defendant who made the confession; it shall be considered by the jury for this purpose only and is not evidence as to the other co-defendants.
*749 The record is absent any showing that the appellant, Clark, made any motion for a severance in the lower court.
In the case of Stoutamire v. State, 1938, 133 Fla. 757, 183 So. 316, our Supreme Court said:
“It is true that the confession of Stoutamire implicated both Manski and Harris and detailed the part that each played in the larceny; however, the Court instructed the jury after each of the officers testified, that they should consider the confession only in connection with the guilt or innocence of Stoutamire and should not consider it in connection with the guilt or innocence of the other two defendants.
“The general rule is stated in 1 R.C. L. 574 as follows:
“ ‘Upon the trial of two or more defendants for a crime, a confession made by one of them is admissible against him, although it implicates the others and tends to prejudice them before the jury. * * * Where, however, two or more defendants are jointly tried for the same offense or for a conspiracy to commit it, the declaration of no one of them made in the absence of the others after the completion of the offense is competent evidence against the others. The prejudicial effect, as against the codefendant, of a confession implicating him when admitted in evidence is supposed to be obviated by an instruction by the court that the confession must be considered only against the defendant who made it, and such an instruction should be given.’
“The confession was properly admitted even though it implicated the two codefendants, as the trial judge thoroughly instructed the jury that the confession was only to be considered against the defendant who made it. This prejudicial effect could have been further obviated by a severance, but counsel did not request the trial court to allow them separate trials.”
See also McCall v. State, 1935, 120 Fla. 707, 163 So. 38; Blanco v. State, 1942, 150 Fla. 98, 7 So.2d 333; Hanson v. State, Fla.1952, 56 So.2d 129; Gagne v. State, Fla.App.1962, 138 So.2d 90.
The appellant, in his brief, states:
“Therefore, the only thing which the State relied upon in its case against CLARK, was the fact that TURNER left him in the company of the two men who were identified as having robbed the store. This circumstance can not be said to lead only to a conclusion that the Defendant participated in the robbery. In view of the fact that the store manager was robbed by only two men, a more reasonable hypothesis is that CLARK left the other two defendants sometime after leaving TURNER off and before the store was robbed.”
The testimony of the witness Turner contained considerably more evidence than that stated in the above quotation from the appellant’s brief. Turner testified that he plotted with the appellant and the other two defendants to rob the market but that he did not go through with it and was not present at the scene when the crime was committed. He also testified that, after the robbery, defendant Pinder had told him that all three defendants had robbed the market. There is also testimony that all three defendants came to Turner’s house after the robbery and were in Pinder’s car when Pin-der allegedly told Turner that they had stolen $400.00.
Prince Turner, testifying as a witness called by the State, gave the following testimony:
“Q On that date, did you have occasion to see the defendants or any of them?
“A Yes.
*750 “Q Whereabouts did you see them?
“A On Haines Street in Plant City.
“Q Which of them did you see?
“A Which one did I see, or which— I saw three of them there.
“Q You saw all three of them?
“A Yes, sir.
“Q Are these the three people that you saw?
“A Yes.
* * * * * #
“Q All right. By your indication you are pointing to the defendants Clark, Pinder and Simmons. Are those the people that you saw that day?
“A Yes.
“Q You saw them on Haines Street ?
“A That’s right.
“Q All right. Just tell the Jury what happened at that time.
* * * * * *
“A When I first started talking, I met Livingston Pinder. Me and him was talking for a while, then he introduced me to the other two boys.
“Q First, you were talking to Livingston Pinder?
“A That’s right. Then, he introduced me to the other two boys.
“Q Were the other two boys there with him at the time you talked to him ?
“A Yes.
“Q Was there anyone else present?
“A It was a lot of girls around there. They was talking to me and Livingston Pinder was talking at first, then he .introduced me to the two boys there. Then, I asked them to go to my house.
“Q You asked these three defendants to go to your house?
“A I asked Livingston Pinder, yes. I tell him to bring them over to my house, so he do, see, where I live at.
* * ⅜ ⅜ * *
“Q Pardon me just a minute. Now, I am talking about when you first started talking to Pinder. Is that what you are going to testify about ?
“A Yes.
“Q All right, go ahead.
“A All right. He asked me, said, he say, ‘What about place around here to hit?’ So I said, ‘What you talking about?’ So he said they fixing to rob place down there, so he asked me what the 'best place to rob. So, I tell him I don’t know. I say, ‘Got a heap of places around here, got Publix — ’
“Q What did you say just then, before Kwik Chek?
“A Publix. And Publix market and Kwik Chek. So, they was talking. We was talking, I mean, all about all these things. So, they decide to show me what they got. Say, ‘We got guns and things.’ So I say, ‘Guns and things ?’ And they carried me down to the house—
* * * * * t-
“THE COURT: Who was present?
“THE WITNESS: Livingston Pin-der and the other two boys, right then. One with glasses on and the one with the sweater on.
“THE COURT: All right. When did they join you?
“THE WITNESS: They joined the conversation as they was talking, too. So, we went to the house where the guns was and they showed me the guns.
*751 “THE COURT: All right. Now, at that.point, all three of the defendants were present?
“THE WITNESS: Yes.
* * * * * *
“Q All right. What was the conversation then when all of you were together, that all of you had?
“A I can’t remember everything what they say, but they decided to rob the Kwik Check closing time. That was around 8:30 or nine o’clock, I guess.
* * * * ⅝ *
“Q All right. Then, what happened?
“A So, we went, after they get ready, we went the first time, we started to go to rob the place. We went on the back of the laundry to go to the place. So, something came up. I think the police was making the round and we turned back. So, after we turned back, I decided not to go. I decided not to go back with them anymore, so—
“Q Why didn’t you go?
“A Where did I go ? I went home.
* * Jfc ‡ ⅜ *
“Q Did you see these defendants again after that ?
“A Yes, sir. It was the next morning after the placed was robbed, around four o’clock, 4:30.
“Q About 4:00 or 4:30 in the morning?
“A Yes.
“Q Whereabouts did you see them ?
“A At my house at the front door.
“Q Did they all come there?
“A Yes, all was in the car.
“Q Did you talk to any of them at that time?
“A Yes. I talked to Livingston Pinder. I asked him, ‘How you all make out?’ • He said they got $400.00 from the place.”
We conclude that the testimony above was sufficient, if believed by the jury, to sustain the guilt of the appellant.
Affirmed.
KANNER and WHITE, JT., concur.