235 So.2d 354 (1970)
Demetra THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 69-569.
District Court of Appeal of Florida, Third District.
May 12, 1970.
Rehearing Denied June 8, 1970.
*355 Gerald Kogan and Robert L. Floyd, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Ronald W. Sabo, Asst. Atty. Gen., for appellee.
Before BARKDULL, HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellant was tried and convicted for the crime of murder in the third degree. She has presented three questions on this appeal, contending that reversible error was committed by virtue of the following: certain rulings of the trial court denying her motion to suppress evidence; comments from the bench during the course of the trial which were allegedly prejudicial to her case; and the prosecutor's allegedly improper and inflammatory closing argument to the jury which prejudiced the fairness of her trial. The latter point has merit and we must reverse.
As to the appellant's first contention, that she was deprived of due process because of admission into evidence of testimony by one of the investigating police officers, we do not find error. The record reveals that the following conversation occurred between the investigating officer and the appellant at the time of the initial investigation of the homicide:
"Q [By the State Attorney] Let me ask you this: When you had this conversation with her, had you placed her under arrest at this point?
"A [By Sgt. Glenn] No, sir.

*356 "Q Was she in any police custody, to your knowledge, at this point?
"A Not at this point; no, sir.
"Q Did you learn who was in the house when this incident occurred?
"A Yes.
"Q Was that from Mrs. Thompson? Did she advise you who had been present when this occurred?
"A Yes.
"Q After this, did you have an occasion to advise her of any rights?
"A At 7:35, I advised Mrs. Thompson of her rights, which consisted of the five paragraph Miranda card.
"Q Did you give that to her from memory or did you read it to her from a Miranda card?
"A I read it from the card.
"Q Do you have the card with you at this time?
"A Yes, sir; I do.
"Q Would you read into the record, please, what you read to Mrs. Thompson and give us, if you will, her responses, if any?
"A `You have a right to remain silent. The constitution requires that I so inform you of this right and you need not talk to me if you do not wish to do so.
"`You do not have to answer any of my questions.'
"She stated she did understand this, she knew she didn't have to talk to me.
"`Should you talk to me, anything which you might say in answer to my questions can and will be introduced into evidence in Court against you.'
"She indicated that she did understand this.
"`If you want an attorney to be present at this time or any time hereafter, you are entitled to such counsel.'
"She indicated that she understood this and she indicated that she did have an attorney that she would talk to him and consult with him on this.
"I advised her `If you cannot afford to pay for such counsel, we will furnish you with counsel, if you so desire, through the Public Defender's Office.'
"She indicated that she understood this and again indicated that she had her own attorney.
"`Do you wish to have an attorney at this time?'
"She indicated no, she did not, that she would talk to her own attorney.
"I asked her: `Knowing your rights as I have just related them to you, are you now willing to answer my questions without having an attorney present?'
"Again she indicated that she would and again she indicated that she would talk to her own attorney later.
"Q When you say `indicated,' what does that mean? What do you mean by that?
"A She stated that she had an attorney and that she would talk to him."
It is the appellant's contention that when she indicated to Officer Glenn that she did have an attorney and that she would talk to him and consult with him, the officer was compelled to immediately stop the interrogation under the mandate of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the courts of this state have held that Miranda does not require an affirmative response expressly waiving the right to consult with an attorney during police interrogation. Hill v. State, Fla.App. 1969, 223 So.2d 548. *357 We do not view the testimony of either Officer Glenn or the appellant to show that, at the time of the initial interrogation, the appellant was then and there unwilling to proceed with the interrogation in the absence of counsel. At best, the implication was that she would consult with her lawyer at a later time and consented to continue with the interrogation.
Our decision for reversal is based upon certain remarks by the prosecuting attorney during his closing argument to the jury.[1] Notwithstanding the high degree of professional advocacy adhered to by counsel in the development and presentation of the state's case, we cannot overlook certain remarks made by the able and highly skilled prosecuting attorney which we deem to have been of such a prejudicial nature as to impair defendant's right to a fair and impartial trial. See Pait v. State, Fla. 1959, 112 So.2d 380.
The priniciple so often enunciated by this court and other appellate courts is
"[T]hat it is the duty of counsel to refrain from inflammatory and abusive argument [and] that it is the duty of the trial court on his own motion to restrain and rebuke counsel from indulging in such argument. The pronouncement complained of was a pure gratuity without any basis in the record for it.
* * * * * *
"So it is immaterial what one is charged with, he is entitled to a fair and orderly trial in an environment reflecting the constitutional guarantees which constitute fair trial. Under our system of jurisprudence, prosecuting officers are clothed with quasi judicial powers and it is consonant with the oath they take to conduct a fair and impartial trial. The trial of one charged with crime is the last place to parade prejudicial emotions or exhibit punitive or vindictive exhibitions of temperament." Stewart v. State, Fla. 1951, 51 So.2d 494.
In Chavez v. State, Fla.App. 1968, 215 So.2d 750, the court summarized the identical issue in these words:
"There is nothing in the record from which we can tell whether the offensive *358 remark, objected to by counsel, recognized by the court as objectionable in sustaining the objection and by the attorney general in argument here, contributed to the conviction. As Mr. Justice Thornal said, in Pait v. State, 112 So.2d 380 at page 385 (Fla. 1959): `We think that in a case of this kind the only safe rule appears to be that unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the judgment must be reversed.'"
The remaining point has been found to be without merit.
Therefore, for the reasons stated, the final judgment of conviction being appealed is hereby reversed and the cause remanded for a new trial.
Reversed and remanded.
SWANN, J., dissents.
NOTES
[1] The appellant's initial statement to the investigating police officer was that the homicide had occurred as a result of an accidental shooting. Later developments, which ruled out the possibility of the accident as described by the appellant, caused a change in the explanation by the appellant. Subsequently, at trial, the appellant testified that prior to the time of the homicide, her husband's behavior had been so violent and brutal as to put her in mortal fear of future outbursts; moreover, those fears culminated on the day of the shooting with a particularly violent threat by the husband, resulting in the defensive shooting of him by the appellant. While addressing himself to the above cited circumstances, the state attorney argued to the jury, "If the evidence had substantiated [appellant's] version of accidental shooting, she would not be here today. The State went on and presented its evidence to a habeas corpus hearing and it presented its evidence in a Justice of the Peace hearing. This woman was advised of her rights." The implication of the above statement to the jury is that the law enforcement officials responsible for the pretrial proceedings all believed the appellant to be guilty. This implication is prejudicial. Cf. Blanco v. State, 150 Fla. 98, 7 So.2d 333.

The appellant has suggested to this court that other remarks by the prosecutor were also so prejudicial and inflammatory as to require a reversal. While we do not view each of the complained-of statements as such, we also find merit in the appellant's contention that the state attorney's words to the jury that he has not "heard anything in this courtroom which says to me that I can look at this woman, this woman before you in the eye and say, `You were justified in shooting that man down,' and she won't look me in the eye when I say that to her." This interjection of personalties was certainly not supported by any of the evidence adduced at trial and was an unnecessary forensic embellishment. We must consider the effect of this remark to have been prejudicial and, when considered cumulatively with the other complained of remarks, the prejudicial effect was not cured by an instruction from the bench. We can find no basis for rejecting this conclusion. See McCall v. State, 120 Fla. 707, 163 So. 38.