205 So.2d 675 (1968)
Charles Hubert COLEBROOK, Cecil Jerry Fernandez, Willie Thomas Jones and Alfonso Sanders, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 66724, 66726-66728.
District Court of Appeal of Florida. Third District.
January 3, 1968.
Rehearing Denied January 31, 1968.
*676 Robert L. Koeppel, Public Defender and Phillip A. Hubbart, Asst. Public Defender; L.J. Cushman, Michael F. Zarowny, Miami, for appellants.
Earl Faircloth, Atty. Gen., and Arden M. Siegendorf and Harold Mendelow, Asst. Attys. Gen., for appellee.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
PER CURIAM.
A fifteen year old high school girl, while walking on the streets in Dade County, Florida and on her way home from a school dance with her brother, two young girls, and another boy, was forced into a car, taken away, beaten and raped.
The appellants, Charles Hubert Colebrook, Cecil Jerry Fernandez and Alfonso Sanders, defendants below, were all tried by jury for the alleged crime and found guilty. Appellant, Willie Thomas Jones, was found guilty of assault with the intent to commit rape, while a fifth defendant at the trial was found not guilty of the rape. The four appeals taken from the adjudications of guilt and sentences have been consolidated for all appellate purposes.
The main thrust of the appellants' arguments is directed to the admission into evidence of an extra judicial post-indictment statement by the defendant Fernandez while he was in custody. This statement was incriminating to Fernandez and implicated the three other appellants. The basis for the attack are the arguments that a "proper predicate" was not provided for admission of the statement; that such a statement is inadmissible under Massiah v. United States,[1] and that the statement was prejudicial to the other defendants. The defendant Jones also argues that it was prejudicial error to deny his motion for a severance.
The so-called "proper predicate" or laying the predicate for establishing the admissibility of an incriminating statement as free and voluntary, has been most ably discussed *677 by Judge Pierce in Williams v. State, Fla.App. 1966, 188 So.2d 320, 328. It is noted that the purpose of the predicate for admission as freely and voluntarily given is to
"* * * `air out' all the facts and circumstances surrounding the giving of such statement. This would include statements made by the parties, the acts and doings of the participants, the conditions and general atmosphere prevailing at the time and place the confession was made, the physical and mental condition of the defendant, and the many other innumerable factors that would logically go into the matter of determining the admissibility of the statement."
It appears that the objections raised by the defense to the "predicate" during the trial sub judice were directed solely to the general prerequisites for admission of a conversation between parties into evidence, i.e. to "the date, time and place and who was present," rather than to matters pertaining to whether the statement was freely and voluntarily made. In Morgan v. State, Fla.App. 1965, 177 So.2d 60, 61, the following statement was made, which is appropriate to these facts:
* * * * * *
"It is now contended that the confession should not have been admitted because the State failed to meet its burden of showing that the confession was freely and voluntarily given. Whether admissions or confessions are freely and voluntarily made is a question for the trial court, and the duty is imposed upon it to determine this question before permitting it to go to the jury. Bates v. State, 78 Fla. 672, 84 So. 373 (1919). Where a confession or admission has been permitted to be introduced into evidence an appellate court may consider its nonadmissibility upon the ground that the confession or admission was not freely and voluntarily made if its introduction was objected to by the defendant and sufficient grounds were stated to call this to the court's attention. Bates v. State, supra.
"In the present instance no action was taken to call to the court's attention the alleged nonadmissibility of the confession upon the ground of involuntariness. Therefore, appellant's first point is governed by Hearn v. State, Fla. 1951, 54 So.2d 651, * * *."
* * * * * *
See United States v. Indiviglio, 352 F.2d 276, 277 (2d Cir.1965).
Notwithstanding the absence of a specific objection to the admission of the confession on the grounds that it was not voluntarily made, the trial judge considered the circumstances surrounding the statement and found it to have been voluntary. We find no error in the ruling that a proper predicate had been established, both as to identification of time and place and voluntariness. The record discloses the following testimony by Deputy Sheriff Ford, to whom the incriminating statement was made:
* * * * * *
"A At approximately 9:45 a.m. I advised Cecil Fernandez that the reason he was brought in there was for questioning pertaining to the * * * rape case, for which he had been charged and had been placed under arrest.
"I advised him he didn't have to make any statement unless it was voluntarily given; that anything he said could be used in a court of law; that he would receive no mistreatment or abuse if he did not make a statement.
"I advised him that he had the right to have an attorney at any time he desired. I then asked him if he had anything he would like to tell us about this case. He said yes, he did at that time, * * *"
* * * * * *
Fernandez then made the oral incriminating statement to Officer Ford. Fernandez *678 was then asked if he would like to give a recorded statement to the same effect, and he replied, "all right." At approximately 10:28 a.m. a recorded statement before a steno-reporter was given to the officer, which ended at 10:35 a.m. It provided in pertinent part as follows:
* * * * * *
"Q [By Dectective Ford] State your full name.
"A Cecil Henry Fernandez.
"Q And your age?
"A Twenty.
"Q And your address?
"A 765 Northwest 67 Street.
"Q Cecil, I'd like to advise you again of your constitutional rights, those being you do not have to make any statements or answer any questions unless you wish to. Anything you say must be voluntary on your part, and anything you say may be used in Court. You are not promised any reward, or hope of reward or leniency, if you do make a voluntary statement. You will not be abused or mistreated in any way if you don't make a statement.
"Do you wish to make a voluntary statement under these circumstances?
"A Yes.
"Q Cecil, I have also advised you before that you have a right to an attorney, and you have been brought before the judge and he has advised you of your rights and your right to an attorney, has he not?
"A Yes.
* * * * * *
"Q Is everything you told me here the truth?
"A Yes.
"Q And have you given the statement freely and voluntarily?
"A Yes.
"Q Have you been abused or mistreated in any way?
"A No."
* * * * * *
"Q This completed your conversation with the defendant Cecil Fernandez?
"A Yes, it did."
* * * * * *
Appellants argue that even if the statement by Fernandez had been a voluntary one, its admission at trial is necessarily barred under the doctrine of Massiah v. United States, because it was a post-indictment statement made while the defendant was in custody and in the absence of counsel. We disagree.
We do not impart such a far-reaching interpretation to Massiah. Our understanding[2] of Massiah is that it, like Spano[3] before it, represents the attempt to resolve a *679 conflict between two fundamental interests of society, interests which must be weighed according to the facts of each case individually. This is stressed at the outset of Spano [Spano v. People of State of New York] by Chief Justice Warren, where he states,
"This is another in the long line of cases presenting the question whether a confession was properly admitted into evidence under the Fourteenth Amendment. As in all such cases, we are forced to resolve a conflict between two fundamental interests of society; its interest in prompt and efficient law enforcement, and its interest in preventing the rights of its individual members from being abridged by unconstitutional methods of law enforcement. * * *" (at 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1267).
* * * * * *
After detailing the circumstances surrounding Spano's statement  that a night-long post-indictment interrogation was held in the police station, despite the fact that Spano's request for an attorney had been denied, and that the police had resorted to the use of a fledgling police officer, a close friend of Spano, who was ordered "falsely to importune his friend to confess,"[4]  the majority concluded that:
* * * * * *
"The abhorrence of society to the use of involuntary confessions does not turn alone in their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves. * * * Our judgment here is that, on all the facts, this conviction cannot stand." (Id. at 360 U.S. 321, 79 S.Ct. 1205)
* * * * * *
In Massiah, "a federal agent succeeded by surreptitious means in listening to incriminating statements"[5] made by Massiah after indictment, in the absence of counsel and while he was released on bail. The agent had been permitted by a co-defendant to install a radio transmitter under the front seat of the car in which the co-defendant was to meet Massiah, so that the agent could overhear the ensuing conversation in which the co-defendant was to elicit incriminating statements from Massiah. Justice Stewart, speaking for the court, explained the holding with a quote from Judge Hays' dissent in the Court of Appeals:
* * * * * *
"* * * [I]f such a rule [Spano] is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse. In this case, Massiah was more seriously imposed upon * * * because he did not even know that he was under interrogation by a government agent." (Id. at 377 U.S. 206, 84 S.Ct. 1203 brackets ours).
* * * * * *
In the case sub judice, outrageous circumstances such as those surrounding the statements in Spano and Massiah have not been demonstrated and our examination of the record discloses none. Fernandez was not tricked into making a self-incriminating remark, nor did it come after a marathon interrogation session. He was advised by a magistrate and the police both of his right to remain silent and his right to counsel, private or court appointed, on numerous occasions. Consequently, we hold that Massiah affords these appellants no salvation with either its Fifth or Sixth Amendment ramifications (as transmitted through the Fourteenth Amendment.)
In Williams v. State, Fla.App. 1966, 188 So.2d 320, the Second District, after first noting that the State had completely failed to establish the requisite voluntariness of Williams' confession, applied Massiah to *680 the fruits of an interrogation which took place nearly eighteen months prior to Miranda, and reversed the judgment. The trial court, in Williams, had allowed the confession into evidence when,
"* * * [N]ot a single question was asked nor answer given as to whether the alleged confession was legally admissible, i.e., whether it was in fact freely or voluntarily made, whether any threats or coercion were used against the defendant, whether he was promised anything, whether he was extended any hope in the future, whether he was put in fear, or whether any of the other improper influences or inducements, hereinbefore partially enumerated, were used, either actually, impliedly, or psychologically."
* * * * * *
Williams was evidently never advised of his right to have his counsel present at the interrogation. Thus, there was never any showing that Williams had made a voluntary statement or that he had intelligently waived his right to counsel. Compare Baker v. State, Fla. 1967, 202 So.2d 563.
The facts before us are significantly different. Fernandez received full warning as to his rights on several occasions. He was advised of his rights to counsel by a local justice of the peace, and by the interrogating officer on each occassion before he was questioned. Whenever Fernandez indicated his desire to stop the interrogation, no further questions were asked. The trial judge found that Fernandez had waived his right to counsel. We find no error in this regard.
The right to counsel may be knowingly and intelligently waived. Brisbon v. State, Fla.App. 1967, 201 So.2d 832. Such a conclusion is consistent with the views set forth in Miranda v. State of Arizona, 1966, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726, 10 A.L.R.3rd 974, where it was stated:
* * * * * *
"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.
"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions *681 or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." [Footnotes omitted]
* * * * * *
Each case must be considered on its own facts in order to determine the question of waiver. Narro v. United States, 370 F.2d 329 (5th Cir.1966); People v. Salcido, 1966, 246 Cal. App.2d 450, 54 Cal. Rptr. 820.
It appears that the defendant here after having been advised on many different occasions of his right to counsel, decided to make a voluntary statement. We find that he "waived his right to counsel" under these facts and circumstances, and that no reversible error was committed by the admission of the statement.
We believe that man is still essentially a "moral" being and that occasionally when he has sinned, or committed a crime, his conscience bothers him and he may want to confess, whether an attorney is present or not, and if properly advised of his constitutional rights such confessions are admissible in evidence, in Florida.
Appellants Colebrook, Sanders and Jones assert that the statement of Fernandez was prejudicial to them and that it was used by the State as corroborating testimony against them. Appellant Jones also urges reversible error in the denial of his motion for a severance on the grounds that Fernandez' statement would deprive him of a fair trial.
The courts in Florida have long adhered to the position that the confession of one defendant is admissible even though it may implicate other defendants so long as that jury is properly instructed that the confession is to be considered against its maker only and not the other defendants. The most recent such case is Kinsey v. State, Fla.App. 1967, 193 So.2d 437, in which this court cited Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). See also Stoutamire v. State, 133 Fla. 757, 183 So. 316 (1938); Coney v. State, Fla.App. 1966, 193 So.2d 57; Clark v. State, Fla.App. 1962, 145 So.2d 748; Gagne v. State, Fla. App. 1962, 138 So.2d 90. The able trial judge in the case on appeal gave proper instructions to the jury on several occasions to disregard Fernandez statement as to any of the other defendants.
The problem of the non-confessing co-defendant who seeks a severance so as to escape the possible psychological ramifications of the implication upon the jury has been discussed recently by Justice Traynor in People v. Aranda, 63 Cal.2d 518, 47 Cal. Rptr. 353, 407 P.2d 265 (1965). The opinion noted that "in the absence, however, of a holding by the United States Supreme Court that the due process clause requires such change [from rule permitting joint trials when confession of one defendant implicates co-defendants], the rules we now adopt are to be regarded, not as constitutionally compelled, but as judicially declared rules of practice * * *." [Id. 47 Cal. Rptr. 306, 407 P.2d 272, brackets ours].
In Hawkins v. State, Fla. 1967, 199 So.2d 276, 278, the Florida Supreme Court stated:
* * * * * *
"* * * This court has long been committed to the proposition that the granting or denial of a motion for severance is largely discretionary, and such a ruling will not be disturbed unless there is a clear showing of abuse of that discretion. See Suarez v. State, 95 Fla. 42, 115 So. 519 (1928). * * *"
* * * * * *
The fact that the statement of Fernandez implicated Jones is not in itself sufficient to require the granting of a severance as a matter of right. See Manson v. State, Fla. 1956, 88 So.2d 272; Carter v. United States, 304 F.2d 881 (5th Cir.1962), 23 C.J.S. Criminal Law § 935, at p. 716 et seq.
*682 The appellant Jones contends that reversible error was committed against him by the trial court's denial of his motions for the production, at trial, of all statements made by the State's witnesses, after the witnesses had testified on direct examination. In Bedami v. State, Fla.App. 1959, 112 So.2d 284, 292, the court stated that "the proceedings involving statements of witnesses taken before the Solicitor of the Criminal Court of Record are not official documents or judicial findings as involved in this case but are in effect the work product of the officer and not similar to evidence before a grand jury." This rule was followed in Jackman v. State, Fla.App. 1962, 140 So.2d 627, wherein the court stated that in Florida "a defendant is not entitled to a transcript of statements of state witnesses taken by the prosecution in the course of preparation for trial unless they were taken before a magistrate or used by the prosecution at trial." Accord McAden v. State, 155 Fla. 523, 21 So.2d 33 (1945) and State v. McCall, Fla. App. 1966, 186 So.2d 324.
In the instant case the motion was for the production of all statements made to the police and to the State's attorney's office by three of the witnesses who testified at the trial. There is no showing, in this record, that any of these statements were taken before a magistrate or were used by the prosecution at trial. We are of the opinion that these are work products of the prosecution and that they are not required to be produced by the prosecution under these circumstances.
All parties contend that there was insufficient competent evidence to sustain the jury verdict. On an issue relating to the identification of an accused, a question of fact is presented which must be determined by the jury. McDowell v. State, 160 Fla. 588, 36 So.2d 180 (1948). We find from a review of the record that it contains sufficient competent, substantial evidence which, if believed by the jury, would support the verdict of guilty. Wright v. State, Fla.App. 1966, 182 So.2d 264. The victim testified that she looked into each one of their faces, speaking of the defendants. She had the time and opportunity to observe the defendants and we find that there was substantial competent evidence upon which the jury could properly make this determination.
For these reasons, the judgments appealed from are
Affirmed.
NOTES
[1] 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
[2] See The Supreme Court, 1963 Term, 78 Harv.L.Rev. 143, 221 (1964), where the following criticism is made: "The Court's opinion in Massiah is so uninformative as to preclude a precise understanding of its rationale. Although only the sixth amendment right to counsel was invoked, the decision probably rests on an unarticulated assumption of the accused's right to silence; ..." See also Enker and Elsen, Counsel for the Suspect, 49 Minn.L.Rev. 47, 57-8, where it is submitted that: "... the real problem facing the Court in Massiah was not one of the right to counsel but rather the permissible extent of governmental deceit inherent in undercover work and the use of informers. * * * Consideration of the case in terms of the right to counsel only obscures the real issue involved and conceals what is in reality a substantial extension of the fifth amendment's protection. * * *"
[3] 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).
[4] Id. at 360 U.S. 319, 79 S.Ct. 1205.
[5] Id. at 377 U.S. 202, 84 S.Ct. 1200.