HENDRY, Judge.
This is an appeal to review a judgment and life sentence entered pursuant to a jury verdict finding the defendant guilty of murder in the first degree with a recommendation of mercy.
The indictment alleged that Robert Stanley Herdzik unlawfully and from a premeditated design effected the death of one Charles Robert McKiearnan by beating him to death with a blunt instrument. The defendant was arraigned and entered a plea of not guilty. The case went to trial following disposition of pretrial motions and a motion to suppress statements and confessions.
It appears from the record that the defendant, an eighteen year old Marine, met the decedent, Charles Robert McKiearnan, a seventy-three year old drug manufacturer, in Columbia, Tennessee; thereafter, the defendant accepted a ride from Mc-Kiearnan and the two traveled in his automobile to Miami, Florida, where they arrived soon after midnight on January 3, 1967. They registered at the motel as McKiearnan and “chauffeur” and occupied a room together.
On January 9, 1967, McKiearnan’s body was discovered hidden in the closet of the motel room which he had occupied with the defendant. McKiearnan had died as a re- *519 suit of having been hit twenty-eight times with a blunt instrument.
On the same day, the defendant was arrested for vagrancy by the Fort Lauderdale Police when he attempted to purchase some clothing with the victim’s credit card. Defendant identified himself as Charles Robert McKiearnan and produced credit cards of the victim as proof. He was wearing the victim’s ring and watch and was carrying the victim’s wallet and cigarette lighter. The defendant was taken to the police station and placed in the holding cell of the booking area. While in this area of the jail the defendant made certain inculpatory statements to the police officers. The substance of the defendant’s statement to the police at that time is that he was AWOL from the Marine Corps; that he had spent the Christmas holidays with his parents in Michigan; that he had come to Columbia, Tennessee, and was waiting for a bus when he struck up a conversation with Mr. Mc-Kiearnan who was driving an automobile with a Michigan license tag. Further, that McKiearnan invited the defendant to join him on a trip to Florida; that defendant accepted his invitation and the two of them drove to Montgomery, Alabama, where they stayed together in a motel room and where he allowed McKiearnan to have homosexual relations with him. Defendant went on to state that the next morning they drove straight through to Miami, Florida, where they checked into a motel together about 1:00 A.M.; they again engaged in homosexual relations, after which they went to sleep. Defendant then said he awoke and thought about turning himself over to the Military Police but decided against it. He also said that he had considered hitting McKiearnan with a Coco Cola bottle. About 8:00 A.M. he removed a loose leg from a TV table, which was in their room and hit McKiearnan four or five times with it. He then took the victim’s body from the bed and placed it in a closet on the other side of the room. Suitcases and the defendant’s duffel bag were then piled in with the body. Thereafter, he removed some of the deceased’s personal belongings, including a check book, wallet, identification papers, watch, ring and car keys. He then left the motel.
In appellant’s first point on appeal it is contended that the trial court erred in admitting into evidence the above statements and other inculpatory statements of the defendant because he was not advised that he had the constitutional right, not only to have an attorney appointed for him, but also to have such attorney present during the custodial police interrogation. The state denies that any of the defendant’s constitutional rights were infringed or that the trial court erred in ruling that the defendant’s inculpatory statements were admissible in evidence. In support of his position, appellant relies heavily on Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
One of the police officers testified that he had fully advised defendant of his constitutional right to remain silent and right to the assistance of counsel at all present and subsequent stages of the proceedings.[1]
One of the other police officers, who was present at the time his fellow officer was advising the defendant of his constitutional rights, testified that the officer informed the defendant that if he did not have money to hire an attorney, one would be appointed for him at some other time and until that time he had the right to remain silent. That officer testified further *520 that the defendant indicated that he did not want an attorney and that he had something he wanted to tell them.
Another police officer, who was present when defendant was being advised of his rights testified that the defendant said that he was aware of his rights and had been told of them before. On cross-examination, it was shown that defendant was not advised as to exactly when an attorney would be provided for him.[2]
The defendant testified that he asked the Fort Lauderdale Police to permit him to speak to an attorney and that he was advised by them that “At this time there is no lawyer available”.
We have carefully considered the evidence adduced by the state and the defendant relating to the cautionary statement made to the defendant by the Fort Lauder-dale police officers upon his initial arrest and those later made by police officers of the City of Miami during transport to Dade County. We have concluded that the defendant was on all occasions properly apprised of his rights and warned in such a manner as to fully satisfy the requirements laid down in Miranda, supra. Moreover, the record shows that the defendant, after being advised of his rights and adequately warned of the consequences of anything he might say, did voluntarily, knowingly and intelligently waive his privilege against self incrimination and his right to have counsel present. Therefore, we have concluded that the trial court ruled correctly in denying defendant’s motion to suppress the inculpatory statements. Ortiz v. State, Fla.App.1968, 212 So.2d 57; Colebrook v. State, Fla.App.1968, 205 So.2d 675; Biglow v. State, Fla.App.1968, 205 So.2d 547.
Appellant’s second and only other point has been considered and found to be without merit.
We have carefully reviewed the entire record and considered all of the points on appeal and all of the contentions advanced by the appellant, and we have concluded that no harmful error has been demonstrated. Accordingly, the judgment and sentence appealed are affirmed.
Affirmed.

. On direct examination, Officer Dreyer of the Fort Lauderdale Police Department, testified that the “ * * * advised the defendant that under the Constitution of the United States he had the right to remain silent, that he did not have to tell me anything, make any statements to me, that he did not have to answer any of my questions, that anything he said could be held against him in court, and that anything he said from then on, he had the privilege of having his attorney there and if he did not have an attorney we would provide one or arrange one for him.”

. Officer Reeves of the Fort Lauderdale Police Department testified on cross-examination that “ * * * [Officer Dreyer] advised [defendant] that if he did not have any money or any wliere-withal to procure counsel at this time that we would attempt to make some effort to obtain counsel for him at some later time and until that time he had the right to remain silent.”