913 So.2d 662 (2005)
Greg MORTON, Appellant/Cross-appellee,
v.
Mark R. HEATHCOCK and Liliana C. Heathcock, Appellees/Cross-appellants.
No. 3D04-1121.
District Court of Appeal of Florida, Third District.
September 14, 2005.
Rehearing Denied November 17, 2005.
*664 Merlin & Hertz and Robert J. Merlin, Miami, for appellant/cross-appellee.
Brigham Moore and Amy Brigham Boulris, Miami, for appellees/cross-appellants.
Before FLECTHER, RAMIREZ, and WELLS, JJ.
WELLS, Judge.
Defendant/Seller, Greg Morton, appeals from a prevailing party fee award entered in an action to enforce a residential real estate contract, claiming the award was unsupported by competent substantial evidence. Plaintiffs/Buyers, Mark and Liliana Heathcock, cross-appeal denial of their 57.105 fee request. We reverse the denial of the 57.105 fee request and remand for an evidentiary hearing to determine the amount of the fee to be awarded.
On May 8, 2001, Greg and Arlene Morton contracted to sell their home to Mark and Liliana Heathcock. As required by the contract, the Heathcocks escrowed $50,000 as a down payment. Among other things, the Mortons agreed to provide the information needed to satisfy an existing mortgage from the sales proceeds; to close two open building permits on the property; and to convey title free of all liens, encumbrances, exceptions, and qualifications. Closing was to occur on or before June 29, 2001.
Shortly after executing the purchase and sale contract, the Mortons provided the Heathcocks with a copy of a marital settlement agreement that they had executed only the week before. In pertinent part, that agreement required the Mortons to sell their marital home and to transfer title free of encumbrances by using the closing proceeds to satisfy the existing mortgage which was then in foreclosure:
It is the Husband's sole liability and responsibility to ensure that the mortgage which is currently a lien on the property is released to enable the property *665 to be sold without being encumbered by the mortgage lien....
At the time of closing, the mortgage shall be satisfied from the proceeds of the sale of the marital home....
In the weeks leading up to the closing, the Heathcocks' attorney, Mark Boulris, communicated regularly with real estate counsel for the Mortons to obtain information needed to close, including a pay-off figure for the mortgage. Because Greg Morton was attempting to settle the foreclosure action, he demanded that the Heathcocks refrain from direct contact with the mortgagee. Rather than providing the Heathcocks with a pay-off figure, Morton secured a court order in the foreclosure action releasing the mortgage and enabling "the [Mortons] to transfer title... free and clear of the [mortgagee's] lien," upon posting of $152,000 in cash from the closing proceeds.
The sale did not, however, close as agreed. Two days before the scheduled closing, the Mortons notified the Heathcocks that they were increasing the sales price by $50,000 purportedly because the Heathcocks had interfered with settlement negotiations with the mortgagee.[1] The Heathcocks rejected this demand advising the Mortons that they expected the closing to proceed on June 29 as agreed and that from the closing proceeds they would (1) make the court-ordered $152,000 payment to release the mortgage lien; (2) pay those sums required by the marital settlement agreement to be paid from the proceeds where pay-off figures had been provided; and (3) satisfy unpaid property taxes for 1999. They also advised the Mortons that they would retain funds escrowed for payment of 2000 taxes and that they would hold back $3,000 from the closing proceeds to cover the cost of closing out two building permits that Greg Morton had agreed, but failed, to resolve.
On June 29, the Heathcocks and their attorney, and Arlene Morton and her attorney, appeared for the scheduled closing. Neither Greg Morton nor his attorney appeared or tendered the documents required to close. The Heathcocks immediately served formal notice of default and demanded return of their $50,000 deposit. While Arlene Morton was willing to return the Heathcocks' deposit, Greg Morton refused to do so.[2]
On August 24, 2001, the Heathcocks brought suit to recover their deposit and for their expenses related to the failed sale. Rather than answering this relatively straight-forward claim, Greg Morton sought to disqualify the Heathcocks' attorney on the grounds that he had represented the Heathcocks in the underlying real estate transaction. After a four month delay, Morton finally answered the complaint and asserted a five-count counterclaim against the Heathcocks for breach of contract; damages in the amount of $50,000 for failure to give notice of and an opportunity to cure "title defects"; slander of title stemming from a lis pendens placed on the property upon commencement of suit; abuse of process related to the filing of the lis pendens; and malicious prosecution *666 related to the filing of the lis pendens. He also asserted two cross-claims against Arlene Morton for breach of the marital settlement agreement and for indemnification claiming that Arlene was "solely responsible for maintaining the subject property," and that her failure to do so was "the cause" of the Heathcocks' refusal to close the sale. He also filed a three-count third party complaint against the Heathcocks' attorney for slander of title, abuse of process, and malicious prosecution related to the filing of a lis pendens.
The gist of Morton's claims against the Heathcocks was not that the mortgagee had refused to settle its foreclosure action against the Mortons because of interference by the Heathcocks as Morton had previously claimed, but that the Heathcocks had become contractually obligated to take title subject to the Mortons' mortgage. According to Morton: the mortgage on the marital home was a title defect about which the Heathcocks had to notify him; he was notified of his own mortgage (the title defect) when the Heathcocks provided him with a copy of their title commitment; this notification triggered Standard A of the real estate purchase and sale agreement[3] which, notwithstanding his representations to a circuit court and everyone's understanding that this mortgage was to be satisfied from the closing proceeds, obligated him to satisfy this mortgage, or cure this purported title defect, within 30 days; when he failed to satisfy the mortgage within 30 days, the Heathcocks had five days under Standard A to notify him in writing whether the cure period would be extended or whether the agreement was terminated, failing which the Heathcocks waived the defect and were bound to take title subject to this defect.[4]
Following extensive discovery, court filings, hearings, and delays, summary judgments ultimately were entered in the Heathcocks' favor on all claims and counter-claims. Along the way, Morton was presented with at least two opportunities to resolve this entire matter by returning the Heathcocks' deposit with little or no additional expense in the form of fees and costs.
In mid-January 2003, the Heathcocks' requests for damages and a fee award were heard. Prior to the hearing, the Heathcocks' attorneys filed affidavits attesting to the nature and extent of their representation and the amount charged for *667 each attorney's services. Attached to these affidavits were detailed statements describing by date the nature of each service provided, the amount of time expended rendering each service, and on some of these statements, the fee generated for each service. One of the two attorneys who represented the Heathcocks attended the hearing. That attorney did not, however, testify, asking instead, over Morton's objection, that the trial court take notice of the affidavits and time records. Neither the affidavits nor the attached billing records were introduced into evidence although an expert witness did testify as to the nature and extent of these attorneys' services and the reasonable value of those services.
A year and a half after this hearing took place, on June 22, 2004, attorneys' fees in the amount of $58,350 and costs in the amount of $3,809 were assessed against Greg Morton. The trial court expressly found Morton's counter-claim and defenses to return of the Heathcocks' deposit to be "frivolous" and concluded that the Heathcocks were entitled to a fee award as both prevailing parties under the real estate purchase and sale contract and under section 57.105:
1. This case arose from a failed residential real estate transaction. The Heathcocks agreed to buy the home of a divorced couple, Grey [sic] and Arlene Morton. At the time, the Mortons owned the home as tenants in common. Although Arlene Morton was at all times ready, willing and able to close, her former husband failed to sum [sic] up for the closing and refused to close unless the Heathcocks took title subject to the Morton['s] mortgage. The Heathcocks, understandabl[y] declined to do so, and asked for the return of their $50,000 escrow deposit. Arlene Morton immediately and continuously demanded that the deposit b[e] returned. Greg Morton refused to return the deposit. This lawsuit resulted, brought by the Heathcocks for return of their deposit.
2. Greg Morton aggressively litigated this case. It took a Court order to get the deposit returned, Morton's various counterclaims were terminated by summary judgment in the Heathcock['s] favor.
3. The tenor of the case can be captured by reciting that Mr. Morton pursued disqualification of the transaction lawyer Mar[k] Boulris from representing the Heathcock[s] in the case, as well as the apparent necessity of and melt-down about a security guard at Mr. Morton's deposition.
* * * *
5. Mr. Morton had the opportunity to settle the case by simply returning the deposit, with each side to bear their own costs and attorney['s] fees. Mr. Morton failed to respond within the reasonable deadline set by the Heathcocks. Mr. [Morton] pursued an unreasonable and unsupported claim....
* * * *
10.... The Court finds that although disproportionate to the amount at issue, [the Heathcocks'] fees were necessitated by Mr. Morton's relentless insistence on the correctness of his position, and he remained throughout determined to resist the return of the real estate deposit and committed to his questionable counterclaim....
11.... [T]he Court finds that this simple case was rendered extraordinarily complex by Mr. Morton's litigiousness. He thwarted effective resolution at every turn.... Mr. Morton's counterclaim theory  that by failing to object to the existing mortgage as a title defect, the Heathcocks were obligated to buy this house subject to the mortgage *668 and were at fault for failing to close  flies in the face of the contract documentation and the law. Mr. Morton did not show up for closing. His counterclaim and defense for the return of the deposit was [sic] frivolous....
12. The Court therefore ... [awards fees] to the Heathcocks on the basis of both prevailing party under their contract and under Fla. Sta[t]. § 57.105....
(Emphasis added).
Despite these findings and conclusions, on rehearing, the court below, citing to the difficulties "inherent in assessing divisibility of responsibility between counsel and client on the 57.105 grounds, and the additional fees potentially incurred in that process," decided not to assess section 57.105 fees. Thus, fees were assessed solely on prevailing party grounds.
The Heathcocks claim error in the refusal to impose a section 57.105 fee award in equal parts against Morton and his attorney; Morton claims that the lack of testimony from any attorney providing services to the Heathcocks mandates reversal. We agree in part with both contentions.
It has long been recognized that use of the word "shall" in section 57.105, "evidences the legislative intention to impose a mandatory penalty in the form of a reasonable attorney's fee once the determination has been made that there was a complete absence of a justiciable issue raised by the losing party." Wright v. Acierno, 437 So.2d 242, 244 (Fla. 5th DCA 1983) (reversing denial of a 57.105 fee award in an action found to be frivolous); see also Wood v. Price, 546 So.2d 88, 90-91 (Fla. 2d DCA 1989) (concluding under a prior version of 57.105 that "[o]nce the determination has been made by the trial court that there is a complete absence of a justiciable issue of law or fact, the award of attorney's fees to the prevailing party... is required") (emphasis added); Debra, Inc. v. Orange County, 445 So.2d 404, 405 (Fla. 5th DCA 1984) (same). The trial court in this case made a determination that the requirements of section 57.105 had been met. That determination is supported by the record which shows that both Morton and his trial attorney knew that Morton's theory that the Heathcocks were obligated to inform him of the existing mortgage and then to take title subject to it when Morton failed to satisfy it prior to closing, was unsupported by either the law or the facts and was utterly baseless.[5] Thus, fees under section 57.105 should have been assessed.
The trial court's dual conclusions that it would be difficult to assess responsibility between counsel and client and that such a determination necessarily would engender additional fees, provides no basis for denying a 57.105 fee award. In O'Grady v. Potash, 824 So.2d 904 (Fla. 3d DCA 2002), the trial court denied a 57.105 award finding that the equities of the situation militated against it. Noting the language of section 57.105 which states that the court "shall" award a reasonable fee in equal amounts against the losing party and that party's attorney upon a finding that the losing party or that party's attorney knew or should have known that a defense was unsupported by the facts or the law, this court reversed. We concluded that *669 because "the legislature has not identified the equities of a situation as a consideration under section 57.105," it was error not to enter a 57.105 fee award. Id. at 905.
The legislature also has not identified difficulties in assessing responsibility between and counsel and client as a consideration in determining whether to award fees under section 57.105. In fact, section 57.105 expressly states that the fee is to be imposed "in equal amounts" against the party and the attorney. Section 57.105 also does not make the cost of obtaining a fee award a consideration when making such an award. Under the circumstances, the Heathcocks are entitled to a 57.105 fee award.
We reject Morton's argument that the Heathcocks' were not entitled to a 57.105 fee award because their fee request was not served 21 days before it was filed. The fee award in this case was imposed on the trial court's own initiative as expressly authorized by section 57.105(1), and not at a party's request.[6] The twenty one day notice requirement imposed by section 57.105(4) on motions filed by "a party," does not, therefore, apply. See § 57.105(4), Fla. Stat. (2002) (providing that a motion by "a party" seeking sanctions under 57.105 must be served twenty one days before filing or presentation to a court to permit the offending party an opportunity to withdraw an offending claim, paper, pleading or motion). We therefore remand for imposition of a 57.105 fee award to be paid in equal parts by Greg Morton and his trial attorney.[7]
We also reverse the trial court's determination regarding the amount of the fee to be awarded. A fee award must be supported by evidence detailing the nature and extent of the services performed and by expert testimony regarding the reasonableness of the fee. E.g., Nants v. Griffin, 783 So.2d 363, 366 (Fla. 5th DCA 2001); Saussy v. Saussy, 560 So.2d 1385, 1386 (Fla. 2d DCA 1990). Although the attorney performing the services for which a fee award is sought need not testify, competent, substantial evidence regarding the nature and extent of the services rendered must be adduced. See Nants, 783 So.2d at 366 (confirming that an affidavit and supporting time records of an attorney providing services, when authenticated by another attorney from the same firm may be admitted into evidence as a business record and constitute competent, substantial evidence to support a fee award); Saussy, 560 So.2d at 1386 (confirming that time records attached to an attorney's affidavit, which are introduced into evidence through the testimony of an associate attorney as business records, are competent, substantial evidence that support a fee award); see also Wiley v. Wiley, 485 So.2d 2 (Fla. 5th DCA 1986) (reversing a fee award where the attorney rendering services neither testified nor had admitted into evidence an affidavit and time records to establish the nature and extent of the representation).
*670 Although an expert witness testified extensively on both direct and cross examination regarding the services rendered by the Heathcocks' attorneys and the reasonable value of those services, neither of the attorneys who rendered services to the Heathcocks testified as to the nature and extent of their representation. And while these attorneys did file affidavits and detailed time statements delineating the nature and extent of their services, neither the affidavits nor the time records were authenticated or introduced into evidence. We therefore reverse the current determination as to the amount of the fee to be awarded because the record does not include the essential evidentiary support outlined herein. But because the record does include some competent substantial evidence to support a fee award, we remand so that the deficiency may be cured. See Rodriguez v. Campbell, 720 So.2d 266, 268 (Fla. 4th DCA 1998) (reversing and remanding for an additional hearing where expert but no timekeeper testimony had been introduced in the form of either direct testimony or via affidavit); see also Bateman v. Service Ins. Co., 836 So.2d 1109, 1111 (Fla. 3d DCA 2003) (citing Rodriguez and confirming that remand is appropriate for additional findings or an additional hearing where the record contains some evidence supporting a fee award but contains no evidence from the attorney who rendered the services).
Accordingly, we reverse and remand for imposition of a section 57.105 fee award in equal amounts against Greg Morton and his trial attorney and for an additional hearing as directed herein regarding the amount of the fee award.
NOTES
[1] According to Greg Morton, the mortgagee was willing to settle the foreclosure action for $100,000 but after the Heathcocks requested pay-off figures from the mortgagee, the mortgagee would not settle for less than $150,000. The mortgagee, however, testified that its agreement to settle for $100,000 never varied.
[2] After the failed closing, Arlene promptly asked the family court to transfer title to her so that she could sell the home as agreed. According to Arlene, she had attempted to salvage the Heathcock sale but Greg refused to cooperate entitling the Heathcocks to return of their down payment. Title was transferred to Arlene; the Heathcocks did not, however, get their money back.
[3] Standard A in pertinent part provides:

Buyer shall have 5 days from date of receiving evidence of title to examine it. If title is found defective, Buyer shall within said 5 days notify Seller in writing specifying the defect(s). If defect(s) render title unmarketable, Seller will have 30 days from receipt of notice to remove the defects, failing which Buyer shall, within five (5) days after expiration of the thirty (30) day period, deliver written notice to Seller either: (1) extending the time for a reasonable period not to exceed 120 days within with Seller shall use diligent effort to remove the defects, or (2) requesting a refund of deposit(s) paid which shall be immediately returned to Buyer. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted the title as it then is. Seller shall, if title is found unmarketable, use diligent effort to correct defect(s) within the time provided therefore. If Seller is unable to timely correct the defects, Buyer shall either waive the defects, or receive a refund of deposit(s), thereby releasing buyer and Seller from all further obligations under this Contract.
[4] The uncontroverted affidavit of James L. Mack (a board certified real estate attorney practicing real estate law since 1950) filed by the Heathcocks' in support of their motion for summary judgment confirmed that the title commitment did not require satisfaction or release of the mortgage before closing; render title unmarketable; or trigger any portion of Standard A.
[5] Morton's trial attorney was the same attorney who represented him in the earlier dissolution proceeding, a proceeding in which Morton executed a marital settlement expressly agreeing to satisfy the mortgage from the sales proceeds from his home. Thus, both Morton and his trial attorney knew that this mortgage was neither a title defect about which Morton had to be put on notice nor a defect that had to be cured prior to closing of the sale.
[6] The Heathcocks and their attorneys sought section 57.105 fees only with respect to Morton's claims relating to the filing of a lis pendens. The trial court's findings regarding entitlement to a 57.105 fee award related to Morton's contract claims and his defenses to the Heathcocks' contract claims, claims on which the Heathcocks sought only a prevailing party fee award.
[7] While section 57.105 provides for a "good faith" exception to an attorney's personal responsibility for fees awarded under that section, this exception can not be claimed in the instant case.