# Third District Court of Appeal

## State of Florida

Opinion filed September 6, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2261
Lower Tribunal No. 19-866-SP
_____

**AT&T Mobility, LLC,**
Appellant,

vs.

**Patrick Rigney,**
Appellee.

An Appeal from the County Court for Miami-Dade County, Gordon Murray, Judge.

Dentons US, LLP, Angel A. Cortiñas and Jonathan H. Kaskel, for appellant.

Beighley, Myrick, Udell & Lynne, P.A., and Maury L. Udell, for appellee.

Before DAMOORGIAN, GERBER, and ARTAU, Associate Judges.

GERBER, Associate Judge.

The defendant below appeals from the county court's final orders

denying the defendant's "[Section] 57.105 Sanctions Motion for Raising a

Baseless 'Data Throttling' Claim," and "[Section] 57.105 Sanctions Motion for Raising a Legally Deficient 'Administrative Fee' Claim." The defendant argues it proved the plaintiff and his trial counsel knowingly asserted and maintained patently false claims, and therefore the county court erred in denying the two motions. According to the defendant, "Section 57.105 … was created precisely to address this type of frivolous litigation."

We agree with the defendant's argument as to its "[Section] 57.105 Sanctions Motion for Raising a Baseless 'Data Throttling' Claim," and therefore reverse the county court's two duplicative orders denying that motion. We affirm, without further discussion, the county court's order denying the defendant's "[Section] 57.105 Sanctions Motion for Raising a Legally Deficient 'Administrative Fee' Claim."

We present this opinion in six sections:

1. The plaintiff's data throttling claim;
2. The defendant's motion for judgment on the pleadings;
3. The defendant's section 57.105(1)(a) motion as to data throttling;
4. The county court's hearings and orders;
5. The parties' arguments on appeal; and
6. Our review.

### 1. *The Plaintiff's Data Throttling Claim*

In August 2019, the plaintiff, through his attorney, filed a statement of claim against the defendant in county court. After the parties stipulated to invoke the Florida Rules of Civil Procedure, the plaintiff ultimately filed a "Corrected Amended Complaint," the first three counts of which are relevant to this appeal.

The plaintiff's "Count I – Fraud" pertinently alleged:

30. … [I]n [its] advertising, sale, and renewal of mobile data plans, [Defendant] represented, directly or indirectly, expressly or by implication, to the *Plaintiff, an **unlimited** mobile data plan customer*, that the amount of data that the Plaintiff could access in any billing period would not be limited. Plaintiff is not in possession of the mobile data contract as it is under the exclusive control of [Defendant].

31. [Defendant] specifically omitted the fact that it intended to throttle Plaintiff's data, without Plaintiff's knowledge or consent. Had [Defendant] not omitted this information, *Plaintiff would have not purchased* [*an*] … ***unlimited*** *plan*.

32. *Plaintiff relied on [Defendant's] representations regarding providing **unlimited** data*, and, as a result, incurred damages and was injured as a result of the fraud by omission.

(emphases added).

The plaintiff's "Count II – Breach of Implied Duty of Good Faith and Fair Dealing" pertinently alleged:

3

38. Plaintiff had a wireless agreement with [Defendant] wherein Plaintiff had a reasonable expectation of performance of the agreement with no throttling of Plaintiff's data speed *so as to provide Plaintiff with unlimited data*.

39. [Defendant] was required to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the Plaintiff in the [Defendant's] performance [of the] wireless agreement.

…

43. As a result of [Defendant's] breach of [the] implied covenant of good faith and fair dealing, Plaintiff has been damaged.

(emphases added).

The plaintiff's "Count III – Damages Under the Florida Deceptive and Unfair Trade Practices Act" pertinently alleged:

47. Upon information and belief, *Plaintiff was a consumer who had an "unlimited" data plan as advertised by [Defendant]*. In the advertising, sale, and renewal of the unlimited mobile data plan, *[Defendant] entered into a mobile data contract with Plaintiff that was advertised as providing access to unlimited mobile data* and did not provide that [Defendant] could modify, diminish, or impair the services of customers who use more than a specified amount of data for permissible activities.

48. [Defendant] imposed significant data speed restrictions on Plaintiff by virtue of its use of its network which flows throughout the United States and in particular, Florida. This practice was, and is, an unfair act or a deceptive trade practice ….

4

49. In the advertising, sale, and renewal of mobile data plans, *[Defendant] has represented, directly or indirectly, expressly or by implication, to **unlimited mobile data plan customers*** that the amount of data that the customer could access in any billing period would not be limited.  Such a representation is unfair or deceptive as defined under the FDUTPA.  Plaintiff is not in possession of the actual mobile data contract as it [is] under the exclusive control of [Defendant].

(emphases added).

## 2. *The Defendant's Motion for Judgment on the Pleadings*

The defendant, after filing its answer and affirmative defenses, filed a motion for judgment on the pleadings.  The defendant's motion pertinently alleged the plaintiff's data throttling claims were "defeated by the plain language of the applicable contracts between [Defendant] and Plaintiff that form the basis of Plaintiff's claims."

The defendant attached to its motion the governing "Wireless Customer Agreement" upon which it was relying.  The defendant argued that even though the plaintiff had failed to attach the agreement to his corrected amended complaint, the county court could consider the agreement's contents in ruling on the defendant's motion.  In support, the defendant cited, among other cases, *Glen Garron, LLC v. Buchwald*, 210 So. 3d 229, 233 (Fla. 5th DCA 2017) ("When a party refers to a document in the complaint,

5

the trial court may use that document to assess the nature of the claims alleged in the complaint.").

The defendant's motion then quoted various sections of the agreement which, according to the defendant, defeated the plaintiff's claims, including the following section:

> [Defendant] **may reduce** _your data … speeds_ at any time or place if your data usage exceeds an applicable, identified usage threshold during any billing cycle.

(emphases added).

Based on such plain language, the defendant argued it was entitled to judgment on the pleadings:

> [C]ontrary to Plaintiff's assertion that the Wireless Customer Agreements do not … allow [Defendant] to "modify, diminish, or impair the service of unlimited mobile data plan customers," these Agreements explicitly provide [Defendant] with the ability to do exactly that. Plaintiff's data throttling claims cannot rely on alleged misrepresentations that contradict the plain language of the parties' contract, thus entitling [Defendant] to a judgment on these claims as a matter of law.

(internal citation omitted).

### 3. _The Defendant's Section 57.105(1)(a) Motion as to Data Throttling_

One month after the defendant filed its motion for judgment on the pleadings, the defendant served the plaintiff with its "[Section] 57.105

6

Sanctions Motion for Raising a Baseless 'Data Throttling' Claim." The defendant summarized its argument under section 57.105(1)(a) as follows:

> [Defendant] has never "throttled" Plaintiff's wireless account as alleged because *Plaintiff has never had an **unlimited** data plan, or any other plan, that was ever subject to the "throttling" program [which] Plaintiff describes. Thus, Plaintiff's "throttling" claim is not supported by the law or material facts necessary to establish the claim*. Pursuant to Florida Statute [section] 57.105, this Court should enter an order requiring Plaintiff and/or Plaintiff's counsel … to pay [Defendant's] reasonable attorney's fees based on the filing and/or maintenance of claims against [Defendant] that are devoid of any legal or factual basis.

(emphases added).

In support, the defendant attached the sworn declaration of a manager within the defendant's "Office of the President." The manager's sworn declaration attested to her personal knowledge to testify regarding the status of a particular customer account and her ability to establish the foundation for the business records exception to the hearsay rule regarding such records. The manager's sworn declaration then pertinently attested:

> [O]n [December 18, 2010], Plaintiff obtained the Nation 450 Rollover with 2GB Data Plan; on September 20, 2013, Plaintiff enrolled in the Family Talk Nation 700 Rollover with 2GB Data Plan; on December 13, 2015, Plaintiff enrolled in the Mobile Share Value 2GB Data Plan; and, on March 27, 2019, Plaintiff obtained the Mobile Share Value 4GB Data Plan and has remained on that plan until the present date.

7

> *None of these plans are an **unlimited** data plan.  As the plan names indicate, the plan price includes a **specific allotment** of data per month.*

(emphasis added; paragraph numbers omitted).  Attached to the manager's sworn declaration were copies of the plaintiff's referenced data plans.

Based on the manager's sworn declaration, the defendant's section 57.105(1)(a) motion pertinently argued:

> *Plaintiff and Plaintiff's Counsel knew or should have known that Plaintiff's claims based on "throttling" of an **unlimited** data plan lack a basis in law and fact.* … Plaintiff cannot state a viable cause of action for fraud, breach of [the implied duty] of good faith and fair dealing, or violation of Florida's Deceptive and Unfair Trade Practices Act … based on "throttling" of an unlimited data plan because Plaintiff has never had an unlimited data plan.  There is no amount of discovery that can possibly call into question the indisputable fact that *Plaintiff has never had an **unlimited** data plan subject to "throttling."*  Plaintiff and Plaintiff's Counsel's refusal to acknowledge this fact requires that this Court impose sanctions against Plaintiff and/or Plaintiff's Counsel in accordance with [Florida Statute section] 57.105.

(emphases added).

The plaintiff did not withdraw his corrected amended complaint's three counts pertaining to his data throttling claim within twenty-one days of service of the defendant's section 57.105(1)(a) motion, as permitted by section 57.105(4), to avoid the possibility of monetary sanctions.  Shortly thereafter, the defendant filed its section 57.105(1)(a) motion with the county court.

## 4. *The County Court's Hearings and Orders*

The county court first held a hearing on the defendant's motion for judgment on the pleadings. At the end of the hearing, the county court orally ruled it was granting the motion with prejudice. The county court requested the defendant's counsel to submit a written order reflecting the oral ruling. However, the following day, before the county court could execute a written order memorializing its oral ruling granting the defendant's motion for judgment on the pleadings *with prejudice*, the plaintiff filed a notice of voluntary dismissal of his entire action against the defendant *without prejudice*.

The county court later held a hearing on the defendant's section 57.105(1)(a) motion. At the hearing, defense counsel pertinently argued:

> Plaintiff's data throttling claim [was] premised on the assertion that [Defendant] throttled his unlimited data plan.
> …
>
> … [T]he problem with [that] assertion [was,] as established by the declaration attached to the motion for sanctions, *Plaintiff has never had an **unlimited** data plan with [Defendant]. … He's always had **tiered** plans.* So … it's not the fact that these claims failed to state a claim[.] [It's] the fact that *[these claims were] based on a falsity. That's what justif[ies] sanctions under Florida [S]tatute [section] 57.105[(1)(a)].*

(emphases added).

The plaintiff's counsel pertinently responded:

9

…  [Plaintiff] alleged and advised me that he had an unlimited data plan.  …  [The declaration attached to Defendant's section 57.105(1)(a) motion is] basically saying [Defendant] didn't have unlimited data.  …

…  That's … not enough to claim that the data throttling claim is frivolous ….  [Under section 57.105(1), t]he Court must find that the claim, when it was filed, "[(a)] was not supported by the material facts [necessary to establish] the claim or defense or [(b)] would not be supported by the application of then existing law to those material facts.["] …

…

And … [section] 57.105[(3)] says, "Notwithstanding [subsections (1)] or [(2)], monetary sanctions may not be awarded [(a)] under paragraph 1[(b)], if the court determines the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law as [it applied] to the material facts, [with] a reasonable expectation of success." …

…  There's been no actions against [Defendant] for throttling people with tiered data ….  I still could have amended the claim to seek a tiered data throttling claim. That may not have been successful, but it has to be frivolous.  And it's not frivolous.

…

… I had a reasonable expectation of succeeding on the claims [in this case].  The fact that this Court disagreed with me, is not in and of itself fatal to my theory that data throttling in and of itself is improper, immoral, unethical.  …

And if [Defendant] actually throttled [Plaintiff], I would've amended the complaint to say it's improper to throttle [Plaintiff] under [his tiered data] contract.  There is no

10

existing law on data throttling, Judge. … And therefore, to hold that this [case] is a sanctionable event is improper under Florida law.

…

I would submit to the court that a data throttling claim, whether it's [an] unlimited [data plan] or … a tiered plan is not frivolous.

In this instance, we didn't get to the next level because the Court basically found … the unlimited [data] claim didn't apply. The Court didn't even address whether or not it was a tiered plan. I didn't even get to that point, Your Honor, because I decided to dismiss the cases.

…

… And I've … [also] met the [losing party's] burden under … [section 57.105(3)(b), which provides that a court may not award monetary sanctions] "against [the] losing party's attorney, [if he or she has] acted in good faith, based on the representations of his or her client, as to the existence of those material facts." … [So] I'd ask the Court to deny [Defendant's] motion for sanctions as to data throttling.

At one point, the county court interrupted the plaintiff's counsel's argument to ask whether the plaintiff's voluntary dismissal of his action without prejudice, after the county court had orally granted the defendant's motion for judgment on the pleadings with prejudice, should affect the court's evaluation of the defendant's section 57.105(1)(a) motion. The plaintiff's counsel responded:

11

[The voluntary dismissal] doesn't affect [the section 57.105(1)(a) motion] at all …. [T]here's been no finding on the issue because [Plaintiff voluntarily] dismissed the case]. *If there was an actual finding under Florida law, then I think [Defendant] could have a theoretical argument that [Plaintiff's data throttling claim]* **was sanctionable***.* …

(emphases added).

In rebuttal, defense counsel argued that Plaintiff's counsel, by basing the corrected amended complaint on the false allegation that Plaintiff had an unlimited data plan, deserved section 57.105(1)(a) sanctions:

This is the exact type of conduct that [section] 57.105[(1)(a)] was intended to prevent[,] and it's not like [Defendant] was [the] only one holding this information, even ignoring the fact we produced [that information] in discovery, and we served it on [Plaintiff's counsel] with the Safe Harbor Letter. You know what type of plan you have. …

…

So, Your Honor, that's the issue here. *You, as a matter of law, have the jurisdiction to determine whether or not filing a claim that's premised on saying you have an unlimited data plan … and especially saying, ["]I don't have a tiered data plan[,"] which is a lie, is frivolous. …* **It's a false assertion of fact.** *And that's exactly the type of frivolous baseless allegation that [section] 57.105[(1)(a)] is meant to deter.*

…

… [I]f [Plaintiff's counsel] would have amended … [the complaint] to a tiered data plan throttling claim … [that] makes zero sense because … you can't throttle a tiered plan … you use up your data and it's done. … So [Plaintiff's counsel] let the false allegation [of having an unlimited data plan] remain in the record

and that's what you can't do, especially after being warned [by service of a section 57.105(1)(a) motion]. …

…

… *[Plaintiff's counsel] tries to say that this was a novel issue. [That] [h]e is trying to change the law. I don't see that, Judge.* **I just see a false allegation.** I'm not sure what [Plaintiff's counsel] would want the law to say here, but I don't see any reasonable basis to conclude this with some extension of the law …

*Here[,] there's no argument regarding law.* **It's just a false assertion of fact that [Plaintiff's counsel] filed with the Court. So issues of law and issues of fact are separate issues under [section] 57.105.** *And there's competent, substantial evidence before this Court that Plaintiff's [c]ounsel and Plaintiff filed a complaint [which] he … explicitly premised on having an unlimited data plan. And then when served with the [section] 57.105[(1)(a) motion,] didn't dismiss it. You can't lie [in] your pleadings. You just can't. It's against the rules.*

… And [Defendant] produced the documents and … served [Plaintiff] with the declaration [attesting that Plaintiff had a tiered data plan, not an unlimited data plan]. Declarations are competent, substantial evidence. A declaration is the same as an affidavit under Florida law. …

So Judge, in conclusion … [Plaintiff's complaint is] premised on having an unlimited data plan, and he didn't have one. So for that reason, Judge, these claims were frivolous. [These claims] were frivolous when … made, [and] … were certainly frivolous when [Plaintiff's counsel] was served with the [section] 57.105[(1)(a)] motion.

(emphases added).

13

After the parties completed their arguments, the county court orally announced it was denying the defendant's section 57.105(1)(a) motion as to data throttling. The county court pertinently stated:

> [A]t the time [I granted the Defendant's motion for judgment on the pleadings, the Plaintiff's data throttling claim] was a fairly debatable argument. … I made the decision [which] I thought was consistent with the law …. And still could have been fairly debatable on appeal … but the Plaintiff[] … decided to do a voluntary dismissal. …
>
> …
>
> But as such I cannot find that these arguments were not fairly debatable, that they were not filed in good faith, that the issue of whether or not the Plaintiff … either had a tier[ed] or unlimited or other type of account still could not be a victim of data throttling or slowing down. … [W]hat I would say is the case was dismissed … so we may never or know whether or not [I] was correct in [my] analysis. …
>
> But I say that again, I don't find that the actions of the Plaintiff was frivolous or in bad faith. So … I respectfully deny the [Defendant's] motion for [section] 57.105[(1)(a)] fee[s] ….

After the hearing, the county court entered two duplicative written orders confirming its oral denial of the defendant's section 57.105(1)(a) motion. The first order stated that the defendant's motion was denied "for the reasons stated on the record." The second order, after stating the defendant's motion was denied, added:

> The Court finds that Defendant has not met its burden with respect to [section] 57.105 … Data throttling is a hotly contested

14

issue with virtual[ly] no substantive applicable law applying to the facts of this case[,] and while this Court did not agree with Plaintiff's theory … merely losing a case does not amount to a frivolous claim.  Moreover, in light of the fact that there is no applicable law on the issue of data throttling, pursuant to [section] 57.105(3)[,] the Court determines that the claim was initially presented to the Court as a good faith argument for the extension, modification, or reversal of existing law[,] or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success in light of the fact that [Defendant] had previously settled numerous cases with Plaintiff's counsel which Defendant did not dispute.

### 5. *The Parties' Arguments on Appeal*

On appeal, the defendant summarizes its argument as follows:

Plaintiff and his trial counsel knowingly asserted and maintained patently false claims.  Based on these false claims, Plaintiff, through counsel, aggressively prosecuted this frivolous case, forcing [Defendant] to expend substantial monies and attorney time defending [this case].  Section 57.105[(1)(a)], Florida Statutes was created precisely to address this type of frivolous litigation.

… *Plaintiff's factual claim that he had an **unlimited** data plan was demonstrably false.*  Plaintiff and Plaintiff's trial counsel should have known it was false prior to filing the [f]rivolous [c]omplaint, and certainly had actual knowledge it was false upon receiving [Defendant's] answer, motion for judgment on the pleadings, and motion for [section 57.105(1)(a)] sanctions and supporting [declaration]. Plaintiff's false allegations violated Section 57.105(1)(a) and required the trial court to impose sanctions. *The [county] court reversibly erred by: (i) ignoring the uncontroverted evidence that Plaintiff did not even have an **unlimited** plan; and (ii) misapplying the good faith exception under Section 57.105(3)(a), which **does not** apply to unsupported factual allegations under Section*

15

*57.105(1)(a) or claims that could have been, but were not, asserted.*

(emphases added).

The plaintiff summarizes his response to the appeal as follows:

> The … claim[s] against [Defendant], asserting that [Plaintiff] was unjustly subject to data throttling … [were] not frivolous, as the trial court correctly ruled. The [county] court correctly noted that … [Plaintiff's] data throttling claim was a good faith argument for extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success. …
>
> …
>
> Based on the entirety of the record, the [county] court did not abuse its discretion in denying [Defendant's] motions for sanctions and should be affirmed in all respects.

## 6. *Our Review*

Section 57.105, Florida Statutes (2019), pertinently provides:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a) Was not supported by the material facts necessary to establish the claim or defense; or

16

(b) Would not be supported by the application of then-existing law to those material facts.

…

(3) Notwithstanding subsections (1) and (2), monetary sanctions may not be awarded:

(a) Under paragraph (1)(b) if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

(b) Under paragraph (1)(a) or paragraph (1)(b) against the losing party's attorney if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts.

Although normally a lower court's order denying a section 57.105(1)(a) motion is reviewed for an abuse of discretion, an appellate court's standard of review is de novo when the lower court's denial of a section 57.105(1)(a) motion is based on an issue of law. *L. Offs. of Fred C. Cohen, P.A. v. H.E.C. Cleaning, LLC*, 290 So. 3d 76, 79 (Fla. 4th DCA 2020); *Paul v. Avrahami*, 216 So. 3d 647, 649 (Fla. 4th DCA 2017).

Here, we agree with the defendant's argument that the county court committed two errors—the first error committed as a matter of law, and the second error committed as an abuse of discretion—in the county court's application of section 57.105.  We will address each error in turn.

17

## A. <u>The First Error</u>

The county court's first error, committed as a matter of law, was in disregarding the legal basis upon which the defendant was seeking monetary sanctions—section 57.105(1)(a)—and instead focusing solely on the plaintiff's request to apply section 57.105(3)(a)'s prohibition of awarding monetary sanctions "if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success." § 57.105(3)(a), Fla. Stat. (2019).

Section 57.105(3)(a)'s plain language states that its prohibition applies to a motion seeking monetary sanctions only "[u]nder paragraph(1)(b)." *Id.* However, the defendant's motion seeking monetary sanctions was *<u>not brought</u>* under section 57.105(1)(b), for which the prevailing party's burden is to show "the losing party or the losing party's attorney knew or should have known that a claim … when initially presented to the court or at any time before trial … *[w]ould not be supported **by the application of then-existing law** to those material facts*." § 57.105(1)(b), Fla. Stat. (2019) (emphases added).

18

Rather, the defendant's motion seeking monetary sanctions was brought under section 57.105(1)(a), for which the prevailing party's burden is to show "the losing party or the losing party's attorney knew or should have known that a claim … when initially presented to the court or at any time before trial … *[w]as not supported **by the material facts** necessary to establish the claim or defense*."  § 57.105(1)(a), Fla. Stat. (2019) (emphases added).

The defendant met its burden under section 57.105(1)(a).  The plaintiff's corrected amended complaint repeatedly alleged—*seven times*, in fact—that he was an unlimited data plan customer (the alleged material fact), to establish his standing that as an unlimited data plan customer, he was unjustly subjected to the defendant's data throttling.

However, as the defendant's section 57.105(1)(a) motion argued, *the plaintiff never was an unlimited data plan customer*.  Rather, as the defendant's manager's sworn declaration—attached to the defendant's section 57.105(1)(a) motion—pertinently attested:

> [O]n [December 18, 2010], Plaintiff obtained the Nation 450 Rollover with 2GB Data Plan; on September 20, 2013, Plaintiff enrolled in the Family Talk Nation 700 Rollover with 2GB Data Plan; on December 13, 2015, Plaintiff enrolled in the Mobile Share Value 2GB Data Plan; and, on March 27, 2019, Plaintiff obtained the Mobile Share Value 4GB Data Plan and has remained on that plan until the present date.

19

> *None of these plans are an **unlimited** data plan.  As the plan names indicate, the plan price includes a **specific allotment** of data per month.*

(emphases added; paragraph numbers omitted).

At no point in the proceedings below did the plaintiff or his counsel attempt to challenge the defendant's manager's sworn declaration in any manner—neither (1) factually on the basis that the defendant's manager's sworn declaration's attestations were not true; (2) legally on the basis that the defendant's manager was unqualified to have rendered such factual attestations; or (3) legally on the basis that her factual attestations were not competent, substantial evidence upon which the county court could grant the defendant's section 57.105(1)(a) motion.

We acknowledge that, at the hearing below, the plaintiff had argued the defendant allegedly had not made any corporate representative available for deposition regarding the plaintiff's claims before the defendant had filed its motion for judgment on the pleadings.  However, after the county court orally pronounced its intent to grant the defendant's motion for judgment on the pleadings with prejudice, the plaintiff chose to voluntary dismiss his action.  The record does not indicate that before voluntarily dismissing the action, the plaintiff had filed a motion for rehearing arguing that a judgment on the pleadings would be premature due to the lack of a corporate

representative's deposition. Nor does the record indicate that upon the defendant's filing of its manager's sworn declaration, the plaintiff sought to depose the defendant's manager regarding her factual attestations, or that the plaintiff attempted to file his own sworn declaration contradicting the defendant's manager's sworn declaration. Thus, we conclude the plaintiff waived any alleged inability to challenge the defendant's manager's sworn declaration.

Our dissenting colleague argues: "[T]he facts set forth in the sworn declaration attached to the motion for sanctions under section 57.105 were never stipulated to nor was the declaration itself introduced into evidence at the evidentiary hearing held on the sanctions motion. Instead of presenting evidence at the hearing, [Defendant] chose to rely solely on its counsel's argument." Those are arguments which the plaintiff never articulated to the county court. Instead, as stated above, the plaintiff failed to challenge the defendant's manager's sworn declaration factually or legally in any manner.

## B. The Second Error

The county court's second error, committed as an abuse of discretion, was in not finding, pursuant to section 57.105(1)(a), that the plaintiff and his attorney knew, or should have known, that the plaintiff's claim, when presented to the county court in his corrected amended complaint, was not

21

supported by the material facts necessary to establish the claim. §
57.105(1)(a), Fla. Stat. (2019). The defendant's manager's sworn
declaration was competent, substantial evidence that the plaintiff never was
an unlimited data plan customer, despite the plaintiff's oft-repeated
allegations to the contrary in his corrected amended complaint. The plaintiff
never presented, and never attempted to present, any evidence
contradicting the defendant's manager's sworn declaration.

The plaintiff's corrected amended complaint, in what may have been a
thinly-veiled attempt to obscure the plaintiff's actual knowledge of never
having been an unlimited data plan customer, alleged in Count I's paragraph
30, "*Plaintiff is not in possession of the mobile data contract* as it is under the
exclusive control of [Defendant]." (emphases added). The corrected
amended complaint repeats this allegation in Count III's paragraphs 47 and
49: "*Upon information and belief*, Plaintiff was a consumer who had an
'unlimited' data plan as advertised by [Defendant]. … *Plaintiff is not in
possession of the actual mobile data contract* as it [is] under the exclusive
control of [Defendant]." (emphases added).

We view these allegations as specious. As the defendant's counsel
contended in his rebuttal argument during the section 57.105(1)(a) hearing,
"You know what type of plan you have." And even if the plaintiff accurately

22

alleged that he did not possess his mobile data contract, he and his counsel should have known what type of data plan that the plaintiff had simply by confirming, through his own billing statements, whether he was an unlimited data plan customer, before alleging that in his corrected amended complaint.

In any event, upon the defendant's service of its section 57.105 motion and its manager's sworn declaration attesting that none of the plaintiff's four data plans had been unlimited data plans, the plaintiff and his counsel had one final opportunity to confirm whether the plaintiff, at any point, had contracted for an unlimited data plan. If the plaintiff never had an unlimited data plan, then he and his counsel could have voluntarily dismissed the action within the twenty-one day safe harbor period without becoming subject to monetary sanctions. The plaintiff and his counsel did not do so. *See HFC Collection Ctr., Inc. v. Alexander*, 190 So. 3d 1114, 1119 (Fla. 5th DCA 2016) ("The primary purpose of the safe harbor [notice] is to provide the party in receipt of the [notice] with the opportunity to withdraw or abandon a frivolous claim before sanctions are sought.").

We also conclude that the plaintiff's counsel should not be excused from the imposition of section 57.105(1)(a) monetary sanctions under section 57.105(3)(b), providing: "Notwithstanding subsections (1) and (2), monetary sanctions may not be awarded … [u]nder paragraph (1)(a) … against the

23

losing party's attorney *if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts*." (emphases added). As stated above, the plaintiff's counsel should have and could have confirmed whether the plaintiff had an unlimited data plan before alleging that in the corrected amended complaint. Similarly, upon the defendant's service of its section 57.105 motion and its manager's sworn declaration attesting that none of the plaintiff's four data plans had been unlimited data plans, the plaintiff's counsel should have confirmed whether the plaintiff had contracted for an unlimited data plan, or else voluntarily dismissed the action within the twenty-one day safe harbor period. Lastly, the plaintiff's counsel cannot fall back on his argument that he could have amended the complaint to allege the defendant had committed data throttling under the plaintiff's tiered data plans. The plaintiff's counsel never sought leave to amend the operative complaint to make this necessary correction, and thus never subjected that argument to the defendant's opposition or the county court's scrutiny.

For these reasons, the plaintiff's counsel is equally subject to section 57.105(1)(a) monetary sanctions. *See Yang Enters., Inc. v. Georgalis*, 988 So. 2d 1180, 1185 (Fla. 1st DCA 2008) ("To avoid liability, counsel must

make an objectively reasonable investigation of the purported facts supporting a claim.").

## *Conclusion*

Based on the foregoing, we reverse the county court's two duplicative orders denying the defendant's "[Section] 57.105 Sanctions Motion for Raising a Baseless 'Data Throttling' Claim." We remand for the county court to enter a single order granting that motion, and to set an evidentiary hearing to determine the amount of reasonable attorney's fees, including prejudgment interest, to be paid to the defendant in equal amounts by the plaintiff and the plaintiff's counsel, incurred in the defense of the plaintiff's data throttling claim from the date of service of the statement of claim upon the defendant through the filing date of the defendant's notice of appeal.

As stated above, we affirm, without further discussion, the county court's order denying the defendant's "[Section] 57.105 Sanctions Motion for Raising a Legally Deficient 'Administrative Fee' Claim."

Affirmed in part, reversed in part, and remanded with directions.

DAMOORGIAN, Associate Judge, concurs.
ARTAU, Associate Judge, concurs in part and dissents in part with an opinion.

25

ARTAU, Associate Judge, concurring in part and dissenting in part.

Zero. That is the amount of evidence introduced at the evidentiary hearing held on AT&T's motion for sanctions pursuant to section 57.105(1)(a), Florida Statutes (2019). Thus, I dissent from the majority's reversal of the trial court's denial of AT&T's motion for sanctions.

The Third District and its sister courts have consistently reversed awards of section 57.105 sanctions when neither the sworn declarations or affidavits, nor other proof, were introduced into evidence at the evidentiary hearing conducted on the sanctions motion. *See, e.g.*, *Glob. Xtreme, Inc. v. Advanced Aircraft Ctr., Inc.*, 122 So. 3d 487, 491 (Fla. 3d DCA 2013) ("[U]nsworn representations by counsel about factual matters do not have any evidentiary weight in the absence of a stipulation." (quoting *Daughtrey v. Daughtrey*, 944 So. 2d 1145, 1148 (Fla. 2d DCA 2006)); *see also, e.g.*, *Pansky v. Pansky*, 259 So. 3d 872, 873 (Fla. 4th DCA 2018) (reversing section 57.105 fee award on grounds that it was not supported by competent evidence because it was "based exclusively on argument of counsel" and records previously provided by counsel in support of the requested fee award were not "admitted into evidence" at the hearing on the motion); *Morton v. Heathcock*, 913 So. 2d 662, 669-70 (Fla. 3d DCA 2005) (reversing section

26

57.105 fee award because attorney "affidavits" were not "authenticated or introduced into evidence" at the hearing on the motion for sanctions).

A trial court's "finding that a party is entitled to recover attorney's fees under section 57.105 must be based upon substantial, competent evidence presented at the hearing" on the motion for sanctions. *Swan Landing Dev., LLC v. First Tenn. Bank Nat'l Ass'n.*, 97 So. 3d 326, 328 (Fla. 2d DCA 2012) (quoting *Mason v. Highlands Cnty. Bd. of Cnty. Comm'rs*, 817 So. 2d 922, 923 (Fla. 2d DCA 2002)); *see also, e.g.*, *Morton*, 913 So. 2d at 669-70. Furthermore, "[i]t is well settled that affidavits are not admissible to prove facts in issue at an evidentiary hearing because they are not subject to cross-examination and because they impermissibly shift the burden of proof to the other party." *Fortune v. Fortune*, 61 So. 3d 441, 445 (Fla. 2d DCA 2011).

Here, the facts set forth in the sworn declaration attached to the motion for sanctions under section 57.105 were never stipulated to nor was the declaration itself introduced into evidence at the evidentiary hearing held on the sanctions motion. Instead of presenting evidence at the hearing, AT&T chose to rely solely on its counsel's argument. Indeed, the only evidence AT&T submitted during the evidentiary hearing was the testimony of its attorney to support its unrelated motion to tax costs based on its status as the prevailing party.

In response to AT&T's contention that the lawsuit was frivolous, the plaintiff's counsel argued: "It's clearly not frivolous. And my point is they have to prove that this claim was frivolous. They have not proven it, period." I agree.

Not only did AT&T fail to introduce competent, substantial evidence at the hearing on the motion in support of its claim that the plaintiff's "data throttling" claim was based on a materially false statement of fact entitling it to section 57.105 fees as a sanction, it failed to introduce any evidence at all. Nonetheless, the majority quotes extensively from the arguments the parties' counsel made at the hearing on the motion for sanctions in support of its conclusion that AT&T met its burden of proving entitlement to 57.105 sanctions.

"Argument of counsel, however, is not evidence." *Blanco v. State*, 7 So. 2d 333, 337 (Fla. 1942); *see also, e.g.*, *Stading v. Equilease Corp.*, 471 So. 2d 1379, 1379 (Fla. 4th DCA 1985) ("The hearing consisted solely of the arguments of opposing counsel, which is, of course, not evidence."). Thus, AT&T did not satisfy its burden to prove it was entitled to sanctions. *See Glob. Xtreme, Inc.*, 122 So. 3d at 491 ("[I]n light of the absence of an evidentiary hearing or the presentation of sworn testimony on the issue, we

28

conclude that the trial court was without discretion to [award section 57.105 sanctions.]").

As the Fourth District explained long ago:

> [T]he practice we wish to see terminated is that of attorneys making unsworn statements of fact at hearings which trial courts may consider as establishing facts. It is essential that attorneys conduct themselves as officers of the court; but their unsworn statements do not establish facts in the absence of stipulation. *Trial judges cannot rely upon these unsworn statements as the basis for making factual determinations; and this court cannot so consider them on review of the record.* If the advocate wishes to establish a fact, he must provide sworn testimony through witnesses other than himself or a stipulation to which his opponent agrees.

*Leon Shaffer Golnick Advert., Inc. v. Cedar*, 423 So. 2d 1015, 1016-17 (Fla. 4th DCA 1982) (emphasis added).

Contrary to our well-established precedent, the majority shifts the burden of proof to the plaintiff by concluding that he somehow waived any need for AT&T to meet its burden of proving by substantial, competent evidence that it was entitled to sanctions. *Cf. Mason*, 817 So. 2d at 923 (reversing an award of sanctions under section 57.105 because "no substantial, competent evidence in support of the motion for fees was presented to the trial court" by the moving party at the hearing on the sanctions motion).

Furthermore, the majority's waiver position is contrary to the plain language of Florida Rule of Civil Procedure 1.530(e), which provides that "*[w]hen an action has been tried by the court without a jury, the sufficiency of the evidence* to support the judgment *may be raised on appeal whether or not the party raising the question has made any objection* thereto in the trial court or made a motion for rehearing, for new trial, or to alter or amend the judgment." Fla. R. Civ. P. 1.530(e) (emphasis added).

Lastly, the majority's waiver position is contrary to the "tipsy coachman" rule because the trial court correctly denied AT&T's motion for section 57.105 sanctions, albeit for the wrong reason, when AT&T failed to meet its burden of proof at the evidentiary hearing on its motion. *See, e.g.*, *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."); *Home Depot U.S.A. Co. v. Taylor*, 676 So. 2d 479, 480 (Fla. 4th DCA 1996) (explaining that when a trial judge makes "the right decision, albeit for the wrong reason" it will be upheld pursuant to the "tipsy coachman" rule adopted by our supreme court in *Carraway v. Armour & Co.*, 156 So. 2d 494, 497 (Fla. 1963)).

Therefore, while I concur with the majority's affirmance of the trial court's order denying the defendant's sanctions motion on the administrative fee claim, I respectfully dissent because AT&T failed to carry its burden of proof at the evidentiary hearing on the sanctions motion and cannot shift its burden to the party it is seeking to sanction.

* * *

**Not final until disposition of timely filed motion for rehearing.**